# Phillips *v.* Erie County Electric Company, Appellant.

*Negligence—Amendment to statement — Electricity — Uninsulated wire—Contributory negligence.*

1. In an action to recover damages for death of plaintiff's husband caused by the negligence of the defendant electric company in the construction and maintenance of a system of electric wires on Sassafras street between. 21st and 23d streets in the City of Erie, the statement laid the place of the accident at 21st and Sassafras streets. An amendment to the statement of claim was allowed after the running of the statute of limitations by which 22d and Sassafras streets was made the place where the accident occurred. *Held,* that the amendment did not substitute a new party or change the cause of action and was properly allowed.

2. In an action to recover damages for the death of plaintiff's husband, it appeared that deceased was a lineman of a telephone company and that while ascending a telephone pole he came in contact with an uninsulated wire, whereby he rceived a shock and fell to the ground and was killed. There was evidence of negligence on the part of the defendant company in not having the wire properly insulated or constructed. *Held,* that the question of negligence on the part of the defendant company and the contributory negligence on the part of deceased were properly submitted to the jury and a verdict for the plaintiff was sustained.

Argued April 27, 1915. Appeal, No. 153, Jan. T., 1915, by defendant, from judgment of C. P. Erie Co., Sept. T., 1911, No. 196, on verdict for plaintiff in case of Vera M. Phillips, by her next friend, W. L. Moore, v. Erie County Electric Company. Before MESTREZAT, ELKIN, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Trespass to recover damages for death. Before BENSON, J.

The action was begun on August 14, 1911. On June 2, 1913, plaintiff asked leave to amend statement of claim, which amendment was allowed.

The facts appear by the opinion of the Supreme Court and in the charge to the jury, as follows:

The case that you are sworn to try is that in which Vera M. Phillips, a minor, by her next friend, W. L. Moore, is the plaintiff, and the Erie County Electric Company is the defendant. It is a case brought in trespass to recover damages which the plaintiff claims to have sustained by reason of the death of her husband, the death having resulted according to her contention, by the negligence of the defendant.

It is proper for us to instruct you that the happening of the accident raises no presumption of negligence. The burden is upon the plaintiff to satisfy the jury, by the weight of the evidence, of the negligence of the defendant and the want or lack of contributory negligence on the part of the deceased.

Negligence is the absence of ordinary care according to the circumstances, and ordinary care is that care which an ordinarily careful and prudent person would use in matters of importance to himself, under similar circumstances and conditions.

The evidence in this case tends to show that the defendant company, sometime in the year 1890, erected a line of poles on the east side of Sassafras street to carry certain high-tension wires for conducting electric fluid for the purpose of street lighting and other commercial uses.

Later, about the year 1897 or 1898, according to the testimony, the Mutual Telephone Company, a corporation of the State of Pennsylvania, was permitted to do business in the City of Erie and granted the right by the proper authorities of the City of Erie to erect a line of poles for carrying their wires along the same side of Sassafras street; it seems that in 1890 the placing of these poles was under the control of the Engineer's Department of the City of Erie. The license granted to the defendant company does not show an exclusive right to that side of the street; that the City did not give up

its right to grant a similar right to other companies desiring to use that portion of the city for other purposes. Later there was created in the City of Erie an electrical department, over which is placed an officer termed City electrician, and after the creation of this office the placing of the poles was given in his care and control, and at the time of the erecting of the poles of the Mutual Telephone Company the city electrician had charge, and he granted a permission to set poles along the line of the poles formerly erected by the defendant company, at such place that the pole would extend up through the wires carried on the poles of the defendant company.

This locality and condition was imposed on the telephone company by the City of Erie, by locating the poles at that point.

Perhaps a year or two before the happening of this accident the Mutual Telephone Company were placing new poles, and for the purpose of decreasing the number of poles (which are more or less of an obstruction along a street or highway) the location of their pole was changed so as to bring the pole also in the line of Twenty-second street, to enable this corner or junction pole at this point to carry not only the wires of the Mutual Telephone Company north and south along Sassafras street, but also to carry the wires on Twenty-second street east and west. A permission was granted, according to the testimony of the City Electrician, to plant this pole exactly in the line of the poles set by the defendant company. There is no evidence that the defendant company ever objected to the poles being located in this way; and they were in this condition on the 11th day of July, 1911, when the decedent, the husband of the plaintiff, was employed as a lineman by the Mutual Telephone Company, and on the afternoon of this day had been sent by his employer to this place, with the other men in the gang, to repair some broken wires or some difficulty at this junction pole. Upon arriving at the place he was directed by the superintendent of the

gang to climb the pole, with a rope attach it to the wire and then throw it over to the men on the ground, when they could pull the cable and the wire over the arm and repair the damage of the broken wire of the company.

The evidence on the part of the plaintiff tends to show that Mr. Phillips started to ascend this pole on the north side of the pole and that he had gone up through the wires attached to this pole, of another electric light company in the City of Erie, and as he proceeded up the pole, there not being sufficient space between the high-tension wires of the defendant company for him to pass through, he had turned over to the west side of the pole and attempted to go out over the wires when his shoulder came in contact with the high-tension wire on the west side of the pole and which was attached to this pole by a bracket, and a circuit, according to the evidence seems to have been formed between this high-tension wire and a wire of the telephone company which went along down the south side of the pole, which badly burned the decedent's shoulder and his right hand and arm up as far as the elbow.

There is no direct evidence upon this point, except that the witnesses tell you the position that he occupied on the pole at that time; that he had his hand on the steps or spikes on the south side of the pole, which would perhaps bring it in contact with this lead wire that led down that side of the pole. The evidence also tends to show that from the position that he occupied, and taking into consideration the arc or rotundity of the pole, he would be unable to see this lead-covered wire, unless he looked specially to see it.

From this shock (which the evidence does not show whether or not was the cause of his death) he fell to the ground, and his skull was fractured somewhere in the back part of the head, at the base of the brain. It would make no difference what was the cause of death if you find that the shock was what caused him to fall,—

whether it was from electricity or from the fall itself,— as bearing upon this case.

He was taken to the hospital, and you have the testimony of the doctor as to the burning of the left shoulder up close to the neck and also the burning of the palm of the hand, and the arm up as far as the elbow. That is also testified to by his brother-in-law, and perhaps one or two of the other witnesses or linemen who were working there at the time.

As bearing upon the negligence of the defendant company, the negligence complained of here was lack of proper insulation, or construction, in arranging these wires and covering the wires that were carried upon these poles. It seems that the wires had been covered with what is termed weather-proofing and that at the point where the decedent came in contact with the wire this weather-proofing had been worn off, allowing the wire to be exposed.

As to whether or not this weather-proofing would be any protection to life the evidence is somewhat conflicting; some of the witnesses for the plaintiff stated it would be extremely dangerous to touch or come in contact with this wire even though it were perfectly covered with the weather-proofing; other witnesses for the plaintiff state that it would afford protection, that it would give a man a chance, that on account of the thickness of the weather-proofing which in dry weather is a non-conductor the currents might not come in contact quick enough, or with sufficient force, to cause a shock or death, but that it being uncovered there was no protection whatever. The testimony of one witness is that the weather-proofing would be more dangerous than the naked wire itself: others of the witnesses state the weather-proofing is not placed there for the purpose of protection of people operating around or near the wire, but more for the protection of the metal of the wire itself. One of their witnesses states that the only proper insulation is distance; that there is no covering that

would make a wire of this character safe, or reasonably safe. That any contact with any wire covered with any insulation known to the trade would be extremely dangerous.

If that is true, gentlemen of the jury, that fact must also be known to the defendant company who are carrying a dangerous fluid through their lines—dangerous to life, to those who may be compelled to pass in close proximity to it.

In a recent case decided in the Supreme Court of this State the law is laid down in these words: "The company, however, which uses such a dangerous agent is bound not only to know of the extent of the danger, but to use the very highest degree of care practicable to avoid injury to every one who may be lawfully in proximity to its wires and liable to come accidentally or otherwise in contact with them: The duty is not only to make the wire safe by proper insulation, but to keep it so by constant oversight and repair."

If that is the law (and it is) then taking into consideration that the only proper insulation that is safe is distance, it is for you to say whether or not under the evidence in this case the defendant company has done its whole duty, in failing to acquire insulation by distance, which seems to have been practicable to have been done, by putting the wires further apart, and that all that is necessary for a company to do in order to acquire that space is to place longer cross-arms upon their poles, upon which to carry these wires loaded with a deadly agent.

They were bound to know, also from the length of time that these poles had stood in these relative positions and the fact that the telephone wires and the fire-alarm wires of the City of Erie were carried upon this pole at an elevation above the point where the wires of the defendant company were carried, that the operatives and linemen of the City of Erie and of the Mutual Telephone Company had to pass up and down this pole, and they

would necessarily have to take into consideration the dangers incident to that employment and to take such precautions as to make the passage up that pole reasonably safe for the men employed in that work.

If, under the law and the evidence, you find from the weight of the evidence that the defendant company has failed to perform its duty in this respect then you would be warranted in finding that they were guilty of negligence.

The next point that you would then take up for consideration would be the absence of contributory negligence on the part of the decedent, for if he contributed by his negligence, in any respect, no matter how small, the plaintiff cannot recover in this case.

Contributory negligence is the absence of care according to the circumstances, and it is that negligence upon the part of the party injured which contributes to the injury and without which negligence the accident could not have occurred. The same rule is laid down for the plaintiff as for the defendant; that in working about a dangerous place the operator must use due and reasonable care, and that care must be commensurate with the place in which he is working, as to whether it is dangerous or not dangerous.

He is not held to the highest degree of care that would be found in one particularly cautious or careful, but that care must be commensurate with the ordinary care of a person of ordinary prudence and carefulness.

The presumption in this case is that the decedent, Mr. Phillips, used such care; because where there is an accident and death results the theory of the law is that the tenacity of life is sufficient to put a person upon due care for the safety of his person, to protect it against personal injury and probable death. That, however, can be rebutted by evidence; or by circumstances in the case. If you find that the decedent did not use due care in climbing this pole, or in the endeavor to avoid coming in contact with the wires, or that he climbed the pole in a

heedless or careless manner, or in a wrong way you would be warranted from that in concluding that there was contributory negligence,—if you find such fact from the evidence in the case.

There is some evidence offered by the defendant tending to show that the deceased might have received this accident by fact of touching this iron pipe, but I cannot see how that would materially alter the case, unless it would show that he had not used proper care in taking hold of it. He, being a lineman, if he took hold of a piece of iron which was grounded, or that he had reason to believe was grounded, and came in contact with a high-tension wire, it might be evidence of contributory negligence: but the marks on the wire show five or six distinct burns: it is for you to say whether the four fingers of his hand could have made those, in the short space of time that he was on the pole after he came in contact with the wire.

If you find that the faulty construction of this line, by the defendant, or that due care was not had in insulating the wires, and from that that the accident was the result of the defendant's negligence to do its duty, and you further find that there is no evidence of contributory negligence growing out of the facts and circumstances of the case, then you would be warranted in finding a verdict for the plaintiff. In case you find a verdict for the plaintiff you would have to find the amount of damages to which she was entitled.

The evidence here tends to show that the decedent was a young man of twenty-one or twenty-two years of age: According to the tables introduced, the expectances given by the actuary tables, which is based on a certain number of deaths per thousand, that is, the relative deaths,—at twenty-two years of age the expectancy is forty and nine-tenths years: that he would live through to the age of sixty-two and nine-tenths years: The American tables gives the same at twenty-two years of age. At twenty-one years the actuary tables give

forty and 99-100 years, and the American tables forty-one and 5-10 years. That is the expectancy of the life of the decedent, had he not been killed.

He was earning $2.75 per day: This money was taken home and expended for his family, according to the evidence. The evidence tends to show that he was in good health and a man of temperate habits; did not smoke or drink much; and the measure of damages would be the earning power of the decedent, less perhaps the amount of money that would be required to board and clothe him and keep him in spending money—that he actually expended. That would be figured from the date of the accident to the date of the finding of your verdict, and for the balance of the period of his life which you find (which may be in excess of the actuary tables) they are given to you as about the time this man would live and earn for his family, as a guide for you; you find his probable earnings during that period and reduce that to its present worth; that is, you wouldn't allow for future damages all of the damages that would be found by a per diem pay or salary, but in the verdict going to the plaintiff you would have to take into consideration the amount of money, and the interest that money would bring, and both at the end of the period of his expectancy, would amount to the future damages sustained.

In weighing the question of damages you should be governed entirely by the evidence. You should be just, and fair: hold the scales of justice exactly even: You should not be controlled by any sympathy for the wife and child, nor by any feeling that you might have against a corporation: you should deal fairly between the parties in this case and award such damages only as would fairly compensate the plaintiff for the loss sustained.

You are a part of this court and it is your duty to act as judges, in awarding damages: If you find that the plaintiff is entitled, under all the evidence, to damages.

You are not to take, from anything we have said upon the question of damages, that we mean to convey to you the idea that the plaintiff is entitled to damages. It is our duty to instruct you upon the amount of damages that you may allow, and only for that purpose do we instruct you upon the question of damages.

You will first take up the question of the negligence of the defendant. If you find that the defendant has used reasonable care according to the circumstances, according to the law we have read to you, in erecting and maintaining this wire, then you would find that they were not guilty of negligence and your verdict would be for the defendant.

Or, if you find that the decedent, Mr. Phillips, contributed by any negligence on his part, no matter how small a degree of negligence, to the happening of this accident, which resulted in his death, your verdict should be for the defendant. It is only in case you find that the negligence of the defendant was the proximate cause of the injury and death of the decedent, and that there was no contributory negligence on his part, that you can find a verdict for the plaintiff.

You should consider the testimony of all of the witnesses whether referred to by the court or not. You are to take into consideration their interest and bias in the case, if they have any, and consider how much that may affect their testimony.

The weight of the evidence of all of the witnesses is for you. It is not possible for the court to comment upon the testimony of all the witnesses, but it is the province of the jury to remember it all.

The defendant has asked us to charge you upon certain points requested: When we affirm a point it means that the law is correctly stated in the point: when we refuse a point it means that it is not correctly stated.

Verdict for plaintiff for $5,500 and judgment thereon. Defendant appealed.

*Errors assigned,* inter alia, were in allowing the amendment to the statement of claim and in refusing to direct a verdict for the defendant.

*Frank Gunnison,* of *Gunnison, Fish, Gifford* and *Chapin,* for appellant.

*N. P. Rossiter,* of *Rossiter, Thompson and Rossiter,* with him *Leslie G. Peck,* for appellee.

PER CURIAM, May 10, 1915:

The amendment to the statement did not substitute a new party or change the cause of action, and was properly allowed: Trego v. Lewis, 58 Pa. 463; Rick v. N. Y., Chicago & St. L. R. R. Co., 232 Pa. 553; Levin v. Clad & Sons, 244 Pa. 194. The action was brought to recover damages for the death of plaintiff's husband caused by the negligence of the defendant in the construction and maintenance of a system of electric wires in Sassafras street between 21st and 23d streets in the City of Erie. The statement laid the place of the accident at 21st and Sassafras street which, by the amendment, was changed to 22d and Sassafras street where the accident occurred.

It will be observed that the negligent act, the cause of action, was committed during the construction and maintenance of the system of wires on Sassafras street between 21st and 23d street which included the point where the accident occurred, whether at 21st or 22d street. The accident resulted in death for which damages are claimed. As pertinently suggested by counsel, the victim of the defendant's tort could die but once, at one time and at but one place, and necessarily there could be but one action by the widow for his death regardless of the point or place between 21st and 23d streets where the tort, laid in the statement, was committed. It is equally true that the amendment did not change the measure of damages nor the evidence required to prove the cause of action set forth in the statement.

. The recent case of Hipple v. Edison Elec. Ill. Co. of Pottsville, 240 Pa. 91, is controlling as to the merits of the case. The question of contributory negligence was not for the court but for the jury and was properly submitted in a charge to which no error is assigned.

Judgment affirmed.