Schladensky, Exctx., v. Continental Life Insurance Company, Appellant.

Argued December 15, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Stadtfeld, JJ.

*John G. Kaufman,* for appellant.

*James F. Masterson,* for appellee.

Opinion by Gawthrop, J., March 5, 1932:

This is an action on a policy of insurance which insured Max Schladensky against death or disability

resulting from his being struck or knocked down or run over while in or on a public highway by a vehicle propelled by steam. The policy required that proofs of loss be furnished to the company within ninety days of the death of the insured, and that any action thereon must be brought within two years from the expiration of the time within which proof of loss was required. The statement of claim filed by plaintiff June 22, 1927, averred that the insured "while walking on a public highway, Willow Street between 9th and 10th Streets, in the City of Philadelphia, was struck by a vehicle propelled by steam, to wit, a railroad train, on July 18, 1926, at about nine o'clock P. M., whereby he sustained bodily injury which resulted in his death the same day." On July 16, 1927, defendant filed an affidavit of defense denying that the insured was struck while walking on Willow Street between 9th and 10th Streets, and averring that the body of the insured was found on July 19, 1926, beside the rails of a private siding of the Wilson Company, south of Willow Street between 8th and 9th Streets, Philadelphia. On March 6, 1930, plaintiff moved to amend the statement of claim by alleging that the insured was killed while walking on Willow Street between 8th and 9th Streets, and the amendment was allowed over the objection of defendant. The trial resulted in a verdict for plaintiff and from the judgment entered thereon defendant appeals.

Two questions are raised, (1) whether error was committed in allowing the amendment to the original statement of claim locating the place where the insured was injured as between 8th and 9th Streets, instead of between 9th and 10th Streets, as first averred; (2) whether the evidence was sufficient to warrant a finding by the jury that the insured met his death by being struck on a public highway by a vehicle propelled by steam.

(1)  Although it is a fact that the amendment to the statement of claim was made after the expiration of the time fixed by the policy for the bringing of this action, it did not change the substance of the cause of action or the character of evidence necessary, after action was barred.  It did not in any way mislead or prejudice defendant; for, the latter set up in its affidavit of defense that the body of the insured was found between 8th and 9th Streets.  The rule laid down in Gail v. Phila., 273 Pa. 275; McKane v. Phila., 78 Pa. Superior Ct. 168; and Phillips v. Erie Co. Elec. Co., 249 Pa. 445, justifies the action of the court below allowing the amendment: Hanley v. Ryan, 87 Pa. Superior Ct. 6, and the other cases relied on by appellant, are readily distinguishable on their facts.

(2)  On July 18, 1926, the insured returned from Asbury Park to Philadelphia on a train which arrived at Camden, New Jersey, about 9:30 P. M.  He lived at 815 Callowhill Street which runs east and west.  The theory of plaintiff was that the insured travelled his usual route from Front and Market Streets to his home by taking at Front and Chestnut Streets a trolley car which runs over Chestnut Street and up 9th Street, and that he got off the car and was walking eastwardly on the south side of Willow Street when he was struck by a car operated by the Reading Company.  It is undisputed that about five o'clock on the following morning his body was found lying about six inches south of the south rail of the Wilson Company siding and under the side of a loaded railroad car which, according to some evidence, was placed there between eleven and twelve o'clock on the night of July 18th.  According to the testimony of one of defendant's witnesses, a box of salt water taffy bearing the name of a dealer in Asbury Park was found by him about 10:30 P. M., on the loading platform of the Wilson Company at a point about opposite the place where the body of the

insured was later discovered. This witness said that
there was no car on the siding at that time. Willow
Street runs east and west in the rear of the Wilson
Company property, which faces on Callowhill Street.
Darien Street runs north and south between 8th and
9th Streets and crosses Willow Street. The city plan
shows that Willow Street is opened eastwardly from
Darien Street, but does not show that it is opened to
the west between Darien and 9th Streets. But several
witnesses testified that it had been physically opened
to 9th Street for many years, was paved with Belgian
blocks and was generally known as a public highway
and used as such by all kinds of traffic. The double
tracks of the Reading Company occupy the middle of
Willow Street between Darien and 9th Streets.
Another small street, known as Drainage Street and
shown by the city plan to be open, begins at the south
side of 9th Street at a point about twelve feet south
of Willow Street, runs at an angle to the south side of
Willow Street and connects with it at a point nearly
opposite the place where the body of the insured was
found. The bed of this street is also paved with
Belgian blocks. The Wilson Company siding runs from
a point on the southern track of the Reading Company
just east of Darien Street in a westerly direction along
the rear of the Wilson Company building to a point
near 9th Street. The ground between the tracks of
the siding is covered with Belgian blocks, so that all
of the ground between the north side of Willow Street
and the loading platform at the rear of the Wilson
building is similar in character and may be and is
used by traffic passing between 9th Street and Darien
Street. A person turning from 9th Street into Drain-
age Street and intending to walk directly to the pave-
ment at the southwest corner of Darien and Willow
Streets would traverse the ground occupied by the
siding if it were not occupied by railroad cars or other

vehicles. Although the exact manner of the death of the insured was not proved, as there were no eye witnesses, a careful study of the testimony in the light of the plans and photographs has convinced us that it supports a finding that the death resulted from the insured's being struck by one of the cars of the Reading Company which was being shifted on part of a public highway late in the night of July 18th. According to some testimony, the marks on his body were such as would be caused by his being caught between the platform of the Wilson Company property and a moving freight car. Proof that the deceased was actually "walking" on a public highway when he was struck was not essential. By the terms of the policy it was sufficient to prove that he was "on" a public highway when he was struck by the "vehicle propelled by steam." As there was evidence to justify the verdict, defendant's motions for binding instructions and for judgment n. o. v. were properly refused.

The judgment is affirmed.