Murrin, Appellant, *v.* Rifugiato.

562

Argued March 27, 1953. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Louis Vaira*, for appellants.

*Frank Reich*, for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, May 25, 1953:

This is an appeal from judgment n.o.v. entered for two defendants after a verdict of a jury for plaintiffs in a trespass action for damages to real property. The single question presented is whether the tortfeasor was the agent of defendant property owners or an independent contractor.

Leroy and Emma Murrin, husband and wife, owners of a house in Wilkinsburg, Pennsylvania, are plaintiffs. The adjoining lot, on which stands a garage but no dwelling house, is owned by Mary Rifugiato, one of the defendants. Plaintiffs alleged and offered evidence to prove that Mary Rifugiato holds the property for her brother Jack Rifugiato, another defendant. Henry Corvino, the third defendant, was employed by Mary Rifugiato in the spring of 1948 to enlarge the garage on her property so that it would accommodate the truck used by her brother in his wholesale produce

business. Corvino in turn hired William C. Garlow to do certain excavation work necessary to the project.

Plaintiffs alleged in their complaint that in excavating for the foundation of the new garage Corvino's workmen entered on their property, uprooted a large locust tree, broke the concrete sidewalk and steps leading from their back porch to the garage, damaged the foundation and back porch of their home, and destroyed the clothes posts in their back yard. The plaintiffs sued Corvino and the Rifugiatos on the theory that Corvino was their agent in performing the alleged tortious acts. Corvino joined Garlow as an additional defendant, alleging that Garlow had been hired as an independent contractor to make the excavation. The evidence at trial showed conclusively that Garlow's men had worked directly under the supervision of Corvino, and the trial judge granted Garlow's motion for binding instructions. No appeal has been taken from that ruling. The jury returned a verdict against the three original defendants in the amount of $2850.00, but the learned court below entered judgment n.o.v. for the Rifugiatos because "All the evidence points to the fact that Corvino was an independent contractor." Plaintiffs have appealed.

The principles of law which determine whether a workman is an agent or an independent contractor were stated with clarity by the present Chief Justice (then Mr. Justice) HORACE STERN, in *Feller v. New Amsterdam Casualty Company*, 363 Pa. 483, 70 A. 2d 299, at p. 486: "The legal distinction between an employee and an independent contractor is so well established as to require little if any discussion. The characteristic of the former relationship is that the master not only controls the result of the work but has the right to direct the way in which it shall be done, whereas the characteristic of the latter is that the person engaged in the

work has the exclusive control of the manner of performing it, being responsible only for the result: . . . ."

The contract of employment between Mary Rifugiato and Henry Corvino was read to the jury in its entirety (except for the last paragraph which provided that the contractor should carry insurance). It was written on the stationery of Henry R. Corvino, "Building Contractor," and provided that he should do the stated work for three thousand ($3,000.00) dollars. The contract gives no indication of any right in Mary Rifugiato to control the *manner* of performing the work. It is undisputed that by its terms the contract could give rise only to an independent contractor relationship. Besides producing such written agreement, all of the defendants testified that Corvino was not subject to the direction of the Rifugiatos in performing the work. Corvino said that *he* retained an independent firm of engineers to make the survey by which he was guided in fixing the limits of the excavation. He further testified that Jack Rifugiato never directed the work, although he often visited the place in the evening after the workmen had departed. The excavator Garlow and his high lift operator, Vernon, both testified that Corvino marked out the boundaries of the place to be excavated and that they followed his direction. Jack Rifugiato testified that he never talked to Corvino.

However, all of this testimony must be disregarded for purposes of ruling on a motion for judgment n.o.v., and we must consider only the testimony favorable to the plaintiffs to determine whether it was sufficient in law to take their case to the jury: *McClintock v. Pittsburgh Railways Company*, 371 Pa. 540, 92 A. 2d 185.

Plaintiffs seek to overcome all these indications of an independent contractor relationship by proof of actual control by Jack Rifugiato. They testified that

he inspected the work frequently during the period of construction. Mrs. Murrin said that "He would be around every evening, looking around at the work they had completed during the day." This is the closest approach in the entire record to evidence which would show that Jack Rifugiato exercised control over the manner in which Corvino constructed the new garage. It is clearly inadequate for that purpose. It is normal for an owner or an interested party to visit the scene of new construction to observe the progress of the work. Such inspections of finished work furnish no evidence of a right to control the workmen. In this respect the case is analogous to *Miller v. Merritt,* 211 Pa. 127, 60 A. 508, wherein we said through Justice MESTREZAT (p. 134) : "The practical effect of the whole agreement, we think, is to authorize the defendants to furnish the materials and to do the work in constructing the floors and roof of the building according to their own method without being subject to the control or direction of the owner except as to the result to be obtained. In the performance of the work, therefore, the defendants were independent contractors and not servants of the owner: . . . ." See also: *Flaharty v. Trout,* 290 Pa. 315, 318, 138 A. 863; *Brooks v. Buckley & Banks,* 291 Pa. 1, 139 A. 379. Similarly here, inspection of the finished work shows only an interest in "the result to be obtained."

Plaintiffs also seek to invoke the doctrine of ratification. They rely upon the testimony of Mr. Murrin that he talked to Jack Rifugiato concerning the damage, and ". . . he told me that he would fix it all up and have steps and everything; it would be all right." This statement obviously has no bearing upon the question of whether or not Corvino was responsible to Rifugiato for the manner in which he performed the work. But plaintiffs attempt to use it as the basis of

an argument that even if Jack Rifugiato was not originally Corvino's employer, he ratified the contractor's act and is therefore liable. The doctrine of ratification has never been carried that far. The single, ambiguous statement quoted above, which is the sole evidence of ratification in the voluminous record of this case, is insufficient to show that Jack Rifugiato consented to be a party to the wrongful entry on his neighbor's land. The statement that "he would fix it all up" may well have been a reference to *Corvino's* promise, testified to by the wife-plaintiff, that *he* would repair the damage he had done.

Assuming, *arguendo,* that Jack Rifugiato did promise to repair the damage done by Corvino, such a promise would be enforceable, if at all, only as a matter of *contract* and not in an action for trespass to real property. Whether or not such a promise would be supported by sufficient consideration is a question which we are not now called upon to decide.

Issues as to the real ownership of the lot in question and who paid for the work which involved the trespass were controverted in the present case. But on the crucial question of agency, the evidence is extremely meager. The plaintiffs failed to sustain their burden of showing a master-servant relationship between Rifugiato and Corvino. The case of *Kopka v. The Bell Telephone Company of Pennsylvania,* 371 Pa. 444, 91 A. 2d 232, upon which plaintiffs rely, is completely inapposite. In that case the evidence showed that the defendant company directed its contractor to enter property on which it had no right to be. In the present case, all the evidence is that the Rifugiatos only directed Corvino to build on their own property. The *employer* made the mistake in the *Kopka* case. The contractor trespassed because he followed the owner's instructions. In the case now before us it was the con-

tractor who trespassed because the *contractor* mistakenly determined the boundary line and hence deviated from his instructions.

Since Corvino was an independent contractor, whose tort was never ratified by the owners, the Rifugiatos are not liable for the contractor's trespass, and the verdict against them was properly set aside.

Judgment affirmed.