Super, Appellant, *v.* West Penn Power Company,
Appellant.

Argued October 8, 1957.   Before JONES, C. J., BELL,
CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*William A. Challener, Jr.,* for West Penn Power Company, defendant.

*J. Lee Miller,* with him *Harvey A. Miller,* for *Louis Super,* plaintiff.

*William J. Lancaster,* for defendant Murrysville Telephone Company.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, March 24, 1958:

After a verdict in favor of both defendants in this trespass action, the court below granted a new trial as to one defendant and refused a new trial and entered judgment upon the verdict in favor of the other defendant. From this order and judgment these appeals were taken.

George L. Super, whose death gave rise to this litigation, was employed by Armstrong County Lines Construction Company (herein called Construction Company) as a lineman. In May 1951 the Construction Company was engaged in the construction of a new telephone line for the Murrysville Telephone Company (herein called Telephone Company) along a public highway known as the Murrysville-Sardis highway in Westmoreland County.

The particular area of that construction pertinent to this litigation was a section approximately three-

quarters of a mile in length running along the Murrys-ville-Sardis highway in a northerly direction beginning at a point where that highway is intersected by another public highway known as the Mamont road. At this intersection was a telephone pole owned by the Peoples Natural Gas Company (herein called Gas Company) known as Pole 1/103 which was also used by the West Penn Power Company (herein called Power Company) for carrying its power lines. From this pole the newly constructed telephone line, placed on poles of the Telephone Company, ran in a northerly direction along the easterly side of the Murrysville-Sardis highway; the line then crossed to the westerly side of the aforesaid highway. The telephone line then continued in a northerly direction to a Power Company pole known as Pole 1/117 where the telephone wires were wrapped around a cross-arm attached to that pole. On the westerly side of the highway the new telephone line was installed both on five (5) Power Company poles as well as on four (4) new poles installed for the Telephone Company by the Construction Company. On the westerly side of the highway the high tension wires of the Power Company were installed on its poles above the telephone wires.

By May 9, 1951 both wires and poles had been strung and erected. On that date the decedent had started to climb Pole 1/103—the Gas Company pole—to assist another workman when he was electrocuted by reason of the fact that a high tension wire of the Power Company had dropped on a telephone wire at the Power Company's Pole 1/117, transmitting a bolt of electricity down the line to the pole upon which decedent was climbing.

The decedent's father, on behalf of decedent's estate and as surviving parent, instituted a trespass action against the Power Company and the Telephone

Company to recover damages arising from the decedent's death. At the first trial of this action the jury awarded plaintiff a verdict against both defendants in the amount of $20,000. A new trial was granted on the ground that the verdict had not been apportioned between the wrongful death and the survival actions. At the second trial of this action the jury returned a verdict in favor of both defendants. The court granted a new trial as to the Power Company and refused a new trial and entered judgment on the verdict in favor of the Telephone Company. We will consider the action of the court in both respects.

The sole basis for the grant of a new trial as to the Power Company was stated by the court below: "Therefore, it was necessary that the Court instruct the jury as to the duty of the Power Company as to licensees, as well as to its duty to decedent while he was lawfully on the pole of the Peoples Natural Gas Company. In this there was prejudicial error, which requires the granting of a new trial as to the Power Company."

An examination of the charge indicates that the court pointed out to the jury that decedent "was at the time upon a pole owned by a third company . . .", adequately explained the duty of the Power Company to exercise the highest degree of care "to avoid injury to anyone who may lawfully [be] in proximity of its wires and who may come into contact with them accidentally or otherwise" and that "if the pole as maintained by the [Power Company] was safe in its position and its fittings and lines, . . . the fact that some other persons did some act which impaired the safety of that pole or its functioning, then the [Power Company] breached no duty to the plaintiff". The court then charged: "The defendants say that they gave no consent to the placing of these wires on their poles, and there is no testimony that their consent was given. If

such were the case—and there is no denial—then if these wires were placed upon that particular pole, the person who placed them there or directed them to be placed there would be trespassing upon property. A power company is not obliged to protect and guard its poles in a transmission line against trespassers. If they keep their lines and facilities in proper condition according to the highest standard of care, and a trespasser disturbs that property, they would not be liable unless they had known or had reason to believe that trespassers had impaired the safety of their poles and facilities and had failed to do some act to correct it. But they were not bound to anticipate that a trespasser would do any act with respect to that pole, nor were they obliged to inspect it from time to time to see whether any trespasser had impaired the safety of the pole and its equipment. Their duty would only arise when they had knowledge that a trespasser had done some act which affected the safety of the pole and had failed to do some act to correct it.

"That is the point which you will have to determine when you come to deliberate upon the liability of the West Penn Power Company, if any."

For a more complete understanding of this charge a brief review of the factual background as presented of record is necessary. In connection with the construction of the telephone line on the westerly side of the highway, the Construction Company utilized two sets of poles: five (5) poles of the Power Company which were already in place and use and four (4) poles which the Construction Company placed in between the Power Company's poles. The construction work required that not only wires but cross-arms be placed on the Power Company's poles. There was no testimony whatsoever that prior to the happening of the accident the Telephone Company or the Construction

Company ever secured permission from the Power Company to place either cross-arms or wires on its poles or that the Power Company knew that such cross-arms and wires had been placed on its poles. The court below considered such testimony unnecessary for several reasons: in the first place the decedent was killed while on the property of the Gas, not the Power, Company; in the second place, the jury could have found that the Power Company had impliedly permitted the use of its poles by the Telephone Company and Construction Company since there was testimony that "for at least two weeks before the accident, [the Construction Company's crew], had been installing poles, placing cross-arms on the Power Company's poles and stringing wires thereon, and, in the absence of any evidence of objection by the Power Company to such use or that the Telephone Company lacked authority for such use, the Construction Company working on or about the Power Company's poles would have been licensees, rather than trespassers." In this respect the court below erred.

The relevancy of decedent's status as a trespasser or a licensee when he met his death would depend on whether he was on the Power Company's property at that time; only if he were upon its property did it become pertinent to determine whether he was there as a trespasser or a licensee for on his status would depend not only the question of his contributory negligence but also the extent of the Power Company's duty to him. The record, however, clearly and unequivocally indicates that decedent, when he met his death, was *not* on the Power Company's property. The trial judge in his instructions not only told the jury that at the time of the accident decedent "was . . . upon a pole owned by a third company" but refused to instruct the jury that decedent might be considered a trespasser. Such ac-

tions were proper. If the trial judge had permitted the jury to determine whether decedent was a trespasser or licensee such an instruction would have been erroneous because decedent was not upon the property of the Power Company when the accident occurred.

Whether the Telephone Company and/or the Construction Company had secured permission from the Power Company to attach wires and cross-arms to the latter's poles was of vital importance in determining the negligence of the Power Company. A critical issue in determining the Power Company's liability was whether it "had knowledge that a trespasser [the Telephone Company and/or the Construction Company] had done some act which affected the safety of the pole (Pole 1/117) and had failed to do some act to correct it." In the absence of *any* evidence that the Power Company granted permission for the use of its poles or knew of such use, the instruction now suggested that the jury determine whether the use of such poles was by one in the status of a licensee is without any basis of fact in the record.

Plaintiff had the burden of proving either that the Power Company knew or that it should have known of the placement of wires and cross-arms on its poles by the Construction and Telephone Companies. A review of the record indicates that there is no proof in this respect. The fact that the work had progressed over a two week period without objection from the Power Company does not, in the absence of any proof that the Power Company either knew or should have known of such work, supply the element of permission by implication. The record shows simply that the Construction Company, acting at the direction of the Telephone Company, strung wires and cross-arms on the Power Company poles without any permission, express or implied, and the testimony falls far short of proof that

either company occupied as to the Power Company the position of a licensee. The trial judge under the circumstances did not err in failing to charge on the question of negligence that the jury might consider the work of stringing the wires and cross-arms the work of a licensee. The reason assigned for the grant of a new trial is without merit and the charge of the court adequately and amply presented to the jury the questions for their determination appropriate to the facts as presented.

The basis upon which the court refused a new trial and entered judgment on the verdict in favor of the Telephone Company was: "The testimony clearly indicates that the relation between the Telephone Company and Sedwick [an individual trading as the Construction Company] was that of employer-independent contractor and the verdict of the jury in favor of the Telephone Company must, therefore, be sustained". The court below very properly stated: "In plaintiff's case against the Telephone Company, plaintiff produced no evidence to show that Sedwick was the agent or employee of the Telephone Company. The chief witness for the plaintiff, Leo Kern, testified that he had worked as a foreman for Sedwick since 1946 and that he was the foreman of the crew of which Super was a member; that the work was done according to plans furnished by the Telephone Company and that all the materials were likewise furnished by said defendant; that he and all of the crew were employees of Sedwick; that the Telephone Company did not have any men at work on this job and that the only action which the Telephone Company took with respect to the work was that its representative would visit the job and, if any changes were to be made in the plans and specifications, he pointed them out to Kern. When asked as to whether said representative interfered with the performance of

the work, his answer was in the negative. The court nevertheless submitted the question to the jury as to whether the defendant had the right to supervise and direct the method and means of doing the work." The court reached the conclusion that the relationship between the Telephone Company and Construction Company was that of independent contractee-contractor. A review of the record fully supports this finding. Cf: *Townsend v. Pittsburgh,* 383 Pa. 453, 457, 119 A. 2d 282; *Murrin v. Rifugiato,* 373 Pa. 561, 563, 564, 96 A. 2d 865; *Pennsylvania Railroad Company v. Allegheny County,* 324 Pa. 216, 218, 219, 188 A. 178.

In considering an appeal from the grant or refusal of a new trial we review the record only to determine whether the court below committed a clear error of law or palpable abuse of its discretion: *Kuhns v. Brugger,* 390 Pa. 331, 335, 336, 135 A. 2d 395; *Hartigan v. Clark,* 389 Pa. 283, 287, 133 A. 2d 181; *Wilbert v. Pittsburgh Consolidated Coal Co.,* 385 Pa. 149, 156, 157, 122 A. 2d 406; *Mozino v. Canuso,* 384 Pa. 220, 223, 120 A. 2d 300. In its order granting a new trial the court below clearly committed an error of law in holding that the trial judge erred in not charging the jury that it might consider that the Construction Company occupied the status of a licensee. Under the evidence presented such a charge would have been totally unjustified and erroneous. Conversely, the court below committed no error of law in refusing a new trial and entering a verdict in favor of the Telephone Company because the evidence clearly established that the relationship between that Company and the Construction Company was one of employer-independent contractor.

A careful review of the record indicates that this case was submitted to the jury under proper and adequate instructions from the trial judge and that the verdict of the jury should stand.

The order of the court below granting a new trial as to the West Penn Power Company is reversed and judgment is directed to be entered on the verdict in favor of the West Penn Power Company. The judgment entered on the verdict in favor of the Murrysville Telephone Company is affirmed.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

On May 9, 1951, George Super, 21 years of age and employed as a lineman by the Armstrong County Line Construction Company, was engaged in what is known as "dead-ending," that is, attaching telephone wires to insulators on the cross-arm of a pole, known as Pole No. 1/103, standing by the side of the Murrysville-Sardis Road in Westmoreland County. Above the telephone wires on this pole, as on other poles along the road, ran high tension wires which carried lethal electricity to the tune of 4600 volts. About 3 o'clock of the afternoon, one of the high tension wires on a pole known as No. 1/117, and which was located a half-mile away from Pole No. 1/103, fell to the telephone wire beneath, impregnating it with its deadly 4600 volts, and the telephone wire instantly shot the mortal charge to Pole No. 1/103, electrocuting George Super working at that pole.

The father of the deceased lineman brought suit against the West Penn Power Company (owner of the high tension wires), and the Murrysville Telephone Company (owner of the telephone line) charging both companies with negligence. He established at the trial that the West Penn Power Company had been negligent in planting its pole No. 1/117 in damp soil, which caused it to lean from the perpendicular, bringing pressure to bear on a wooden pin holding the tension

wire in place. This wooden pin, already defective, broke, and the tension wire, its insulation worn away, dropped to make contact with the telephone wire beneath, converting it into an unintentional executioner of the young man on pole No. 1/103 a half mile away. The jury returned a verdict of $20,000 against both defendants, but the Common Pleas Court ordered a new trial because the Trial Judge had failed to instruct the jury on the method of apportioning any verdict which they might return, as between the two causes of actions joined and heard together.

At the second trial the jury returned a verdict in favor of both defendants. The Common Pleas Court now ordered a new trial as against the West Penn Power Company because the Trial Judge had failed to instruct the jury regarding the duty of the West Penn Power Company to licensees on or near its property. It affirmed the verdict in favor of the telephone company.

This Court, on appeal by both the plaintiff and the West Penn Power Company, has reversed the action of the lower Court which ordered a new trial against West Penn and it has affirmed the refusal of a new trial against the telephone company.

Thus, the plaintiff, after having once been awarded a verdict of $20,000 because of the loss of his son, now finds himself out of Court completely, having for consolation only a legal explanation which must be as enigmatic to him as the mysterious forces of electricity are to mankind.

This Court has decided that the plaintiff is not entitled to a new trial, with the explanation that the issue in the case does not revolve around whether George Super was a licensee or not. It says that the West Penn Power Company cannot be responsible in any event for the death of George Super because it did

not authorize the Murrysville Telephone Company to erect cross-arms or hang wires on its (West Penn's) poles. With all due respect, I am constrained to say that this observation fails to see the forest for the trees. It is utterly immaterial whether West Penn authorized Murrysville to string wires or not. West Penn owed a duty to the whole world to maintain its power lines in a safe condition. It was required by law to exercise the highest degree of care in the maintenance and operation of its equipment. As far back as 1904, we said, in the case of *Alexander v. Nanticoke Light,* 209 Pa. 571, 574, that a power company which uses so dangerous an agent as electricity "is bound not only to know the extent of the danger, but to use *the very highest degree of care* practicable to avoid injury to every one who may be lawfully in proximity to its wires and liable to come *accidentally* or otherwise in contact with them." *

George Super came into contact with the West Penn lethal current accidentally and innocently. He had the right to be protected from negligence on the part of the West Penn Company regardless of any agreement or lack of agreement it may have had with the telephone company. A man walking on the street who is injured by a falling high tension wire is entitled to recover damages from the power company unless the power company can show that it exercised the highest degree of care in the circumstances.

The Trial Court was in error when it charged the jury that: "A power company is not obliged to protect and guard its poles in a transmission line against trespassers." By this instruction the Court gave the jury the definite impression that George Super was or could have been a trespasser at the time of his death.

---

* Italics mine throughout.

He was not a trespasser in any sense of the word. The pole on which he was working was not owned by West Penn but by the Peoples Natural Gas Company. George Super was not tampering with the wires of the West Penn Power Company. He was working with the wires of the telephone company which had a contract with his employer, the Armstrong County Line Construction Company. The telephone wires on which George Super was engaged were as harmless as clothes lines. Suddenly they became as deadly as venomous serpents. Who and what caused this fatal transformation? Who was responsible for rocketing through the innocuous telephone wires the catastrophic electricity which toppled George Super to his death?

The Trial Court, I repeat, charged the jury: "A power company is not obliged to protect and guard its poles in a transmission line against trespassers." This instruction was astounding error. A power company is indeed obliged to protect and guard its poles in a transmission line against trespassers. A power company imprisons within its lines one of the most dangerous agencies known to man, and it has a responsibility to see to it that that agency does not escape. The owner of a savage tiger must protect and guard the tiger's cage against the world, trespassers and all—not to save the tiger from harm, but to prevent the tiger from killing people.

The Trial Court said further in its charge to the jury: "They [the power company] were not bound to anticipate that a trespasser would do any act with respect to that pole, nor were they obliged to inspect it from time to time to see whether any trespasser had impaired the safety of the pole and its equipment." This instruction was appalling error. There is the highest duty on the part of a power company to inspect its lines from time to time to see that its equipment

has not been impaired by trespassers or anyone else. In Holland where two-fifths of the country lies below sea level and is protected from inundation by dunes and dikes, an unremitting vigil is required to keep the ocean at bay. The vigil is aimed not only at hostile breakage but breakage of any kind. Drowning is no less fatal if it comes at the hands of careless friends instead of hostile trespassers.

In the case of *Dugan v. Erie County Elec. Co.,* 241 Pa. 259, the plaintiff's husband was killed when a heavily charged electric light wire of the defendant company extended downward to within three inches of the ground. A telephone company had extended a guy wire from one of its poles between the defendant company's poles in such a fashion that when the wind blew, the wires of the power company and the telephone company would meet. The plaintiff recovered a verdict and this Court affirmed the judgment, saying: "The only ground on which the defendant could be held liable was that the accident resulted from its failure to properly inspect its system of wires, and this was the single question submitted to the jury. There was evidence that the touching of the wires gave rise to a condition that would inevitably cause one of them to fall and that *this condition would have been disclosed by proper inspection. The duty to inspect was clear; whether it had been properly performed was for the jury.*"

In the case of *Novak v. Ford City Borough,* 292 Pa. 537, a child was seriously injured when the defendant borough allowed an electric wire to sag to a point four or five feet from the ground. In sustaining a verdict for the plaintiff, we said: "It needs no argument to show that suffering a high voltage wire to remain so near the ground in a place frequented by the public was evidence of negligence . . . The trial judge properly instructed them [the jury] that electricity was a highly

dangerous agency and those using it must exercise the highest degree of care consistent with its practical operation. This accords with a long line of cases, among which are Kingan v. Duquesne Light Co., 287 Pa. 280; Lynch v. Myersdale E. L. H. & P. Co., 268 Pa. 337. It was defendant's duty to place the wire safely and keep it so by inspection and repair. *If from any cause it unduly sagged, the defendant should have found and repaired it.*"

If the construction company, in stringing telephone wires on the power company's poles, did so in such a fashion that the public was endangered, it was the responsibility of the power company to see to it that the telephone wires were removed or that the high tension wires were properly protected against dangerous influence caused by the closeness of the telephone wires. No matter what may be the nature of the invading influence, the power company must meet it. It cannot avoid responsibility merely by saying that it was the telephone company and not itself which created the danger, any more than it can say, after a storm has swept its lines to the street below, that it is not required to make immediate repair because it was not responsible for the storm.

This Court, instead of ordering a new trial because of the manifest deficiencies in the Trial Court's charge to the jury, adds its own incongruity to the entire confused picture by saying that there is no proof that the Power Company "knew or that it should have known of the placement of wires and cross-arms on its poles by the Construction and Telephone Companies." With all due respect, I must say that this conclusion suspends in mid-air without any pole of authority, cross-arm of fact, or wire of logic to support it. The record shows that the construction company began its work on the power company's poles two weeks before the

accident. Certainly a power company charged with the "highest degree of care" cannot say that it measured up to this standard of vigilance if, in two weeks, it made no inspection.

In *Schrull v. Phila. Sub. G. & E. Co.,* 279 Pa. 473, this Court held that the general practice of a power company to examine its high tension wires in a cursory manner three times a week did not discharge it of its obligation to make proper inspection. In the case of *Grossheim v. Pittsburgh & A. Tel. Co.,* 255 Pa. 382, we held that it was a question for the jury to decide whether the defendant company's failure to check its wires 16 hours after a storm constituted a failure to make proper inspection.

There is no evidence in the record that the West Penn Power Company made any inspection during the two weeks that the Armstrong County Line Construction Company was erecting poles and stringing wires on its right of way. This in itself would constitute a question of fact for the jury as to whether it had exercised the high degree of care required by the law. But, it is said that, even if an inspection had been made, there was nothing to put the power company on notice that the construction company was using the power company's poles for the purposes indicated. Such a contention can find no residence in the city of logic and no niche in the hall of fact. The most fragmentary inspection imaginable could not help but have revealed that workmen of the construction company were climbing up the power company's poles, that they were hammering timbers to the crests of the poles, that they were hanging telephone wires in proximity to the high tension wires of the power company. It would be difficult to imagine anything more conspicuous to passers-by on the road than the sight of men clinging to telegraph poles in broad daylight. It would be curious

to imagine something more difficult to conceal than the silhouettes of men glued to telegraph poles against the background of the sky.

Even if the power company's suppositious inspectors had been blind and had been led along the company's right of way, they would still have learned what the construction company was doing—by the noises which had to accompany the rolling into position of trucks, the unrolling of wires from huge spools, the hoisting into position of heavy timbers, the nailing and bolting of those timbers against the tops of the poles, the yelling and shouting of the men as they tested for position and alignment of the wires,—for it must be noted that George Super was only one man of many men engaged in this work. On the day of the accident he was one of a five-man crew. It is to be noted also that, in addition to stringing wire on the power company poles, the construction company put up poles of its own, in immediate proximity to the power company poles. How could any inspection worthy of the word fail to note the digging into the earth, the excavation of soil, and the lifting into position of a tall pole like the mast of a ship?

If the power company made no inspection of its man-killing wires in two weeks' time it was guilty of gross negligence, if its men surveyed the right of way and failed to note the tremendous activity above indicated they must have been either unconscious while they made the inspection or were wholly indifferent to what their senses proclaimed to them was happening. In either event, the power company indicted itself of palpable negligence. At any rate, it was charged with explaining why it failed to see what was as obvious as an armada of crows on their way to pillage a plantation of corn.

In the case of *Phillips v. Erie Co. Elect. Co.,* 249 Pa. 445, the Mutual Telephone Company had erected poles for its wires in close proximity to poles carrying electric power for the Erie Co. Elec. Co., and in some places the power company poles extended through the telephone wires. The plaintiff's decedent was killed when, while repairing some broken wires of the telephone company, he came into contact with the high-tension wires of the power company. The plaintiff recovered a verdict and this Court, affirming the judgment, specifically approved the Trial Judge's charge which said, inter alia: " 'The duty [of the power company] is not only to make the wire safe by proper insulation, but to *keep it so by constant oversight and repair.'* If that is the law (and it is) then taking into consideration that the only proper insulation that is safe is distance, it is for you to say whether or not under the evidence in this case the defendant company has done its whole duty, in failing to acquire insulation by distance, which seems to have been practicable to have been done, by putting the wires further apart, and that all that is necessary for a company to do in order to acquire that space is to place longer cross-arms upon their poles upon which to carry these wires loaded with a deadly agent. They were bound to know, also from the length of time that these poles had stood in these relative positions and the fact that the telephone wires and the fire-alarm wires of the City of Erie were carried upon this pole at an elevation above the point where the wires of the defendant company were carried, that the operatives and linemen of the City of Erie and of the Mutual Telephone Company had to pass up and down this pole, and they would necessarily have to take into consideration the dangers incident to that employment and to take such precautions as to make the passage up that pole reasonably

safe for the men employed in that work. If, under the law and the evidence, you find from the weight of the evidence that the defendant company has failed to perform its duty in this respect then you would be warranted in finding that they were guilty of negligence."

The plaintiff in this case was entitled to a charge as clear, definitive and legally correct as the one above quoted. He did not get such a charge and he should have a new trial because he did not get it. The Trial Court has recognized the deficiencies in its charge and it has ordered a new trial. This Court has said repeatedly that ordinarily it affirms an order for a new trial unless there has been abuse of discretion.* I fail to see that the lower Court abused discretion in ordering a new trial against the West Penn Power Co.

At the end of the first trial, when the plaintiff was awarded a verdict of $20,000, the Court en banc said that there was adequate evidence of negligence "upon which to base the jury's finding of liability as regards the defendants." The Court of Common Pleas has altered its view so far as the telephone company is concerned, but it stands firmly on the proposition that there is sufficient evidence in the case to justify a verdict against the power company. A review of the record emphatically confirms that view. To deny the plaintiff an opportunity to present his case to a jury when he has already won a verdict (taken from him through no error on his part or insufficiency of evidence), represents to me a gross miscarriage of justice, and I, accordingly

Dissent.

---

* *Crouse v. Smith*, 381 Pa. 431.