**Morey GREENBAUM**

v.

**UNITED STATES of America.**

**Civ. A. No. 69–1036.**

United States District Court,
E. D. Pennsylvania.

Sept. 25, 1973.

John J. McCarty, Philadelphia, Pa.,
for plaintiff.

Robert N. DeLuca, Asst. U. S. Atty.,
Philadelphia, Pa., Ignazio J. Ruvolo,
Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiff, Morey Greenbaum, filed this action against defendant, United States of America, for damages arising out of a fall in the parking lot of the United States Post Office at 9405 Bustleton Avenue, Philadelphia, Pennsylvania on March 1, 1968. Suit is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.,[1] and this court has jurisdiction under 28 U.S.C. § 1346. A non-jury trial was held for two days beginning March 8, 1973, at which time the parties presented testimony. We now make our findings of fact and conclusions of law required by Fed.R.Civ.P. 52 in rendering our decision.

### Facts

1. The accident to plaintiff, Morey Greenbaum, occurred on March 1, 1968.

2. Plaintiff was then 46 years of age, and was employed as a letter carrier by the United States Post Office at its Bustleton Station located at 9405 Bustleton Avenue, Philadelphia.

3. Plaintiff was not on duty on March 1, 1968, but had gone to the Bustleton Station primarily to pick up his paycheck. He also intended to purchase some postage stamps while he was there.

4. It was customary for employees to pick up their paychecks if their day off fell on a payday, but this was not required by the Post Office which would hold the checks until whenever the employee came for them.

5. It was snowing lightly on the morning of March 1, 1968 and the driveway, parking lot and maneuvering areas of the Bustleton Station were covered in

1. At trial the Government made a motion to hold this case in abeyance to allow the Board of Employees Compensation to determine whether plaintiff's case was covered by the Federal Employees Compensation Act, 5 U.S.C. § 8101 et seq., which is an exclusive remedy for government employees injured in the course of their employment. Due to pe-culiar facts in this action we declined to do so and permitted the action to go forward. *See*, Greenbaum v. United States, 360 F. Supp. 784 (E.D.Pa., filed April 27, 1973). The case, in accordance with that opinion, shall be treated as a cause of action arising under the Federal Tort Claims Act.

most places with approximately one inch of snow, although spots had been cleared by the wind or by travelling vehicles.

6. Plaintiff parked his car in the lot behind the post office building along the south fence.

7. The lot was intended for the use of postal vehicles, employee parking during working hours and vehicles of companies which made large deliveries to or pick-ups from the post office. It was not intended for use of individual patrons of the post office. While such persons sometimes did use the lot, they were never invited or encouraged to do so and in fact were often chased by employees.

8. The driveway and parking lot were in very poor condition with many potholes in the area, including a very large one near the ramp which led from the driveway onto the loading platform. Gravel from the potholes was scattered in the area around the potholes.

9. Plaintiff had worked at the Bustleton Station at 9405 Bustleton Avenue since it first opened at that location in May, 1965.

10. Plaintiff was very familiar with the condition of the driveway and the parking lot which had been in the same condition for many months and which he used every work day.

11. The superintendent had complained to the Postmaster for Philadelphia about the condition on several occasions.

12. The lease between the Government and the lessors, James and Robert Weinberg, contained terms whereby lessors covenanted to maintain the demised premises in good repair and tenantable condition. (Lease provision #7) (Defendant's exhibit #9).

13. The Government had contacted the lessors' agent, Charles Kahn, Jr., and the lessors, James and Robert Weinberg, concerning repairs to the property on several occasions in the latter half of 1967.

14. On August 8, 1967, Anthony Lambert, Postmaster, Philadelphia, wrote a letter to Charles Kahn, Jr., Kahn & Co., Realtors, who was the managing agent of the premises, wherein Mr. Lambert notified Mr. Kahn of the need of repairs at the Bustleton Office including the existence of several potholes in the driveway and parking area. (N.T. at 228) (Defendant's exhibit #20).

15. On October 30, 1967, Anthony Lambert, Postmaster, Philadelphia, again wrote a letter to Mr. Kahn notifying him of the existence of a large pothole in the center of the driveway as well as several other smaller holes in and about the driveway and parking area. (N.T. at 229) (Defendant's exhibit #22).

16. On November 30, 1967, J. F. Noone, Chief, Real Estate Branch, United States Post Office, Philadelphia, wrote a letter to the Prudential Insurance Company of America, mortgagee of the property in which the mortgagee was notified of the necessity for various repairs, including the pothole which was responsible for the injury to plaintiff. (N.T. at 229) (Defendant's exhibit #10).

17. It was the practice of the Post Office Department to put repairs out for bid with private contractors when the lessor failed to make such repairs when requested. (N.T. at 25)

18. On December 27, 1967, after receiving no response from either the lessors or their agents concerning the condition of the property the United States Post Office by A. C. Edwards, Director, Plant Maintenance, Philadelphia, Pennsylvania, did solicit bids for repairs to the Bustleton Station, including the asphalt driveway.

19. On January 25, 1968, J. J. Shaeffer, Assistant Chief, Real Estate Branch, Philadelphia, Pennsylvania, wrote a letter to Charles Kahn, Jr., real estate agent for the owners of the Bustleton Station property wherein Mr. Kahn was notified

of the solicited bids for work to be done to the premises. (Defendant's exhibit #13)

20. On February 5, 1969, J. J. Shaeffer again wrote Charles Kahn, Jr. notifying him of a third bid received by the Post Office for repair work to be done at the Bustleton Office, including repair of the asphalt driveway. (Defendant's exhibit #14)

21. On the day of the accident plaintiff intended to use the employees' entrance to the building which was on the platform in the rear, adjacent to the parking area.

22. When plaintiff got out of his car he saw that he could not go up the steps on the left side of the platform because several vehicles blocked his access.

23. Plaintiff then decided to use the ramp which was to his right and which led up from the driveway.

24. Plaintiff knew that there was a very large pothole close to the curbing and the ramp.

25. Plaintiff intentionally walked in the areas which were completely snow covered, even though he knew of the potholes and the loose gravel in the area around them.

26. Plaintiff did not wear any overshoes or rubbers although he knew it was snowing when he left the house and that there was snow on the ground.

27. There was a curb which jutted out perpendicular from the end of the ramp. A vehicle which was parked perpendicular to the ramp had one set of wheels on the curb and, thus, its side hung over the curb slightly.

28. Plaintiff attempted to squeeze between the side of the car and the large pothole in the driveway, which he knew came very close to the side of the car.

29. As plaintiff neared the ramp he stepped on some loose gravel at the edge of the large pothole and fell to the ground, fracturing his right ankle.

30. The cause of plaintiff's fall was the loose gravel on which he stepped.

31. The outline of the pothole was visible in spite of the snowfall, and the gravel which caused the fall lay on the level part of the driveway.

32. Plaintiff got up, hobbled into the post office through the employees' entrance and told several of the other employees, including the superintendent, James Esposito, what had happened. They immediately took him to Nazareth Hospital where Dr. Richard Cautilli reduced the fracture and put it in a cast.

*Discussion*

Preliminarily, it should be noted that plaintiff is not attempting to recover under the "hills and ridges" doctrine. Under Pennsylvania law, a plaintiff who seeks recovery for injuries sustained as a result of the defendant's negligence in allowing the accumulation of snow or ice on defendant's premises must meet the "hills and ridges" doctrine as enunciated in Rinaldi v. Levine, 406 Pa. 74, 176 A.2d 623 (1962). The Pennsylvania Supreme Court there held that the plaintiff must prove:

. . . (1) that snow and ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians travelling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such condition; and (3) that it was the dangerous accumulation of snow and ice which caused the plaintiff to fall. Absent proof of all such facts plaintiff has no basis for recovery. 406 Pa. at 78–79, 176 A.2d at 625–626.

The record indicates that at the time of the accident it was still snowing lightly [2] and approximately one inch had accumulated. Plaintiff also testified that he walked over the untravelled portion of the snow. Accordingly, the plaintiff cannot claim that defendant had negligently allowed such snow to ac-

2. N.T. at 135.

cumulate in ridges or elevations so as to unreasonably obstruct travel.

Under the *Rinaldi* theory plaintiff must establish the causal connection between the existence of the hill or ridge and the plaintiff's fall. The plaintiff's testimony reveals the cause of the fall to be the pothole and loose gravel surrounding it, not the snow.

Therefore, the hills and ridges theory is inapplicable and accordingly any recovery by plaintiff must rest on an ordinary negligence theory of liability.

We conclude that defendant was not guilty of negligence and that plaintiff was guilty of contributory negligence and thus we need not consider whether plaintiff was a licensee or an invitee.[3] Irrespective of whether plaintiff was a licensee or an invitee, contributory negligence would bar his recovery. Nonetheless, for purposes of the following analysis we shall assume without deciding that plaintiff was a business invitee when he slipped and fell on the Bustleton Post Office driveway.

■■ The possessor of land owes a business invitee a duty to exercise reasonable care to keep the premises in a reasonably safe condition or to warn of hidden dangers thereon. Stimmel v. Kerr, 394 Pa. 609, 148 A.2d 232 (1959). As our findings of fact indicate the defendant did, on two separate occasions, in accordance with the terms of the lease, notify the managing agent, Mr. Charles Kahn, Jr., of the need to repair certain conditions existing at the Bustleton Office, including the asphalt driveway and large pothole. When this action failed to produce any results, the defendant notified the Prudential Insurance Company of America, mortgagee of the property, informing them of the condition of the premises and the need for repairs. Correspondence copies of this letter were sent to James and Robert Weinberg, the lessors, and Mr. Kahn,

the managing agent. Again, the defendant obtained no action in response to these requests. Receiving no cooperation from any of the above parties the defendant instituted a procedure whereby it went outside the terms of the lease in an effort to secure repairs to the property. On December 27, 1967 the defendant on its own initiative did solicit bids from three independent contractors for the work needed. It was shortly after the defendant had received the three estimates and notified Mr. Kahn thereof that the accident occurred. These facts establish that the Government proceeded with reasonable diligence in attempting to have the potholes in the driveway repaired. Accordingly, the Government was not negligent since it did exercise reasonable care to keep the premises in a reasonably safe condition, thus meeting the obligation which it owed to its business invitees.

We must next consider whether the plaintiff's prior, actual knowledge of the existence of the condition which allegedly caused his injury precludes his recovery on the basis of contributory negligence.

■ It is well established under Pennsylvania law that contributory negligence is a complete bar to recovery by a plaintiff injured by defendant's negligence. Where the plaintiff's actions indicate that he has failed to exercise reasonable care for his own protection and safety, and that failure is the sole or a contributory cause to his injury, he may not recover. Bredder v. Leindenfrost, 134 F.Supp. 487 (M.D.Pa.1955). Or, where a person by his own actions has unnecessarily subjected himself to a danger which should have been anticipated and is thereby injured, then he is guilty of contributory negligence. Mroz v. Dravo Corp., 429 F.2d 1156 (3 Cir. 1970).

■ The possessor of land, the position occupied by the defendant, is under

---

3. The issue would be crucial in determining the duty or standard of care owed to the plaintiff by the possessor of land with respect to the question of negligence. A higher duty of care is owed to the business invitee than the licensee.

an obligation to a business invitee to exercise reasonable care to keep the premises in a reasonably safe condition or to warn of hidden perils of which he knows. However, this affirmative duty is not required if the danger to be warned against is an obvious one. Stimmel v. Kerr, *supra*. The authors of Restatement (Second) of Torts take a similar view as expressed in § 343(A).

> A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

It is, therefore, apparent that contributory negligence by plaintiff will bar recovery from the possessor of the land even assuming, as we have, that plaintiff is a business invitee.[4]

The next determination to be resolved is the degree of obviousness or knowledge of the dangerous condition that is required in order to justify a finding of contributory negligence.

In comment (e) to § 343(A) of Restatement (Second) of Torts, the authors state that an invitee is "entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes."

The testimony reveals that the plaintiff did have actual knowledge of the condition, which he acquired through his day-to-day employment at the Bustleton Post Office. He had been employed by the post office in this particular office since it moved to the premises in 1965. The superintendent of the Bustleton office had complained of the existing condition in an effort to remedy the situation during the winter of 1967–68. The same superintendent testified that the driveway and parking area had been in varying states of disrepair since the office was built in 1965. Plaintiff's own testimony indicates that he had knowledge of the condition on the day of the mishap.[5]

In Pewatts v. J. C. Penney Co., 356 F.2d 586 (3 Cir. 1968), the owner of a store was not liable to a business invitee who tripped over a low platform used for a dress display. The platform was in clear view of the customer, whose own testimony stated that she (the invitee) was looking at the floor where she was walking when the accident occurred. The Third Circuit Court of Appeals held that defendant store owner was not an insurer and a plaintiff cannot walk blindly or carelessly into a clearly visible object and recover for injuries which resulted from her negligence.[6]

The testimony establishes that plaintiff Greenbaum had knowledge of the existence of the large pothole but nevertheless chose to proceed along a course which he knew would take him into close proximity to it. Plaintiff testified that he was exercising great care because he knew of the pothole and the loose gravel, but mistakenly thought that he had safely passed it.[7] It, therefore, appears that plaintiff, knowing full well of the potential danger, nevertheless chose the route which was most likely to camouflage the dangers of which he knew and to which he fell victim. But for the plaintiff's negligent action of choosing the camouflaged and dangerous route of which he had knowledge the fall and subsequent injury would not have occurred. The plaintiff's contributory negligence was, therefore, the proximate cause of his injury.[8]

4. See Pewatts v. J. C. Penney Co., 356 F.2d 586 (3 Cir. 1968).

5. N.T. at 74–75.

6. 356 F.2d at 589, n. 6 *quoting from* Stenson v. Rechutti, 416 Pa. 548, 551, 207 A.2d 760, 762 (1965).

7. N.T. at 79.

8. *See* Restatement (Second) of Torts, § 465(1) (1965), where it is stated:
   The plaintiff's negligence is a legally contributing cause of his harm if, but only if, it is a substantial factor in bringing about his harm and there is no rule restricting his responsibility for it.

## Conclusions of Law

1. This action arises under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671.

2. Plaintiff at the time of institution of this action resided within the jurisdiction of this Court.

3. The "hills and ridges" doctrine of Pennsylvania law does not apply to the instant case.

4. The defendant was not negligent in that it exercised reasonable care to keep the premises in a reasonably safe condition for its business invitees.

5. Plaintiff was contributorily negligent in that he failed to exercise reasonable care for his own safety and protection, as required under Pennsylvania law.

6. The contributory negligence of the plaintiff was a proximate cause of his injury.

7. Judgment shall be entered in favor of the defendant and against the plaintiff on the issue of liability.