Hader, Appellant, *v.* Coplay Cement Mfg. Co.

Argued January 15, 1963. Before MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Lewis R. Long,* for appellant.

*Donald E. Wieand,* with him *Richard W. Shaffer,* and *Butz, Hudders, Tallman & Wieand,* for appellees.

*Maxwell Davison,* with him *Efron & Davison,* for Lloyd S. Keifriter, appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, March 19, 1963:

On and prior to May 24, 1955, Coplay Cement Mfg. Co. (Coplay) owned and operated at Coplay, Lehigh County, a cement manufacturing plant and stone quarry. Contemplating improvements and additions to its facilities, Coplay on September 22, 1954 entered into

a written contract with Kennedy Van Saun Mfg. & Eng. Corp. (Kennedy), a concern which has a plant and factory at Danville, Pa., for the manufacture and delivery by Kennedy, inter alia, of a two and a quarter million pound stone crusher to be located on Coplay's land. This stone crusher was manufactured and, in the late winter or early spring of 1955 (possibly March, 1955), was delivered to Coplay in accordance with the contract.

This stone crusher was to be installed in an open, uncovered pit or quarry, with the top of the crusher approximately at ground level and the base of the crusher 30 to 35 feet below surface in the quarry, approximately a quarter of a mile from Coplay's plant but upon Coplay's land. This crusher was to be housed in a building which was to be approximately 50 feet high. For the unloading, assembling, and installation of the stone crusher and erection of the building to house the crusher Coplay had entered into a contract with Lloyd S. Keifriter (Keifriter), payment for such work to be on a "cost plus" basis.

Upon delivery by Kennedy to Coplay of the manufactured stone crusher, Keifriter began the work of installation and erection provided under the Coplay-Keifriter contract. By May 24, 1955, Keifriter had begun the erection of the building to house the crusher and by that date this building, 50 feet high, was roofed and partially sided although most of the sides of the building were still open. By that date the crusher itself had been set in place, inside of and at the base of the building, above the open pit or quarry. The work of installation of the crusher was still in progress and bolts and other materials necessary to secure the crusher had not been completely attached.

What might be termed the outer face of the crusher, circular in shape and known as the spider, was in place and surrounded by steel girders. Beyond these girders,

on the same general level, was a concrete area for walking—this area surrounded the girders and spider—and surrounding this concrete walk was a four foot high concrete wall. The top of the spider was six inches higher than the level of the surrounding girders; from the spider to the girders was a space of approximately 24 inches; from the girders to the concrete walk was a space of approximately 30 inches. All the space between the concrete walk and the girders and the girders and the spider were open.

On May 24, 1955, Steven J. Hader, the plaintiff (Hader), was employed as a millwright by Keifriter and had been so employed for a number of years.[1] On that date at about 8:20 a.m., Hader was carrying a large bolt—36 inches long, $2\frac{1}{2}$-3 inches in diameter and weighing 60 pounds—from the concrete walking area over the girders to the spider for the purpose of inserting this bolt in the spider. There had been a drizzling rain that morning and, by reason of the fact that the sides of the structure which housed the crusher were for the most part open, moisture had formed on the girders and the spider and this moisture together with what appeared to be dust, ostensibly coming from cement plants in the vicinity,[2] caused a slippery condition on top of the girders and the spider. Hader stepped from the concrete walking area to a girder and, attempting to step from the girder to the spider, he

---

[1] Hader's employment by Keifriter is conceded. During trial Hader's counsel stated on record: "Mr. Long. He [Hader] was in the employ of Keifriter and always has been. Mr. Elfron: And was at the time of the accident? Mr. Long: Yes. . . ." Hader contends that, while he was in Keifriter's employ, he was under the control and direction of Coplay and Kennedy.

[2] The record indicates there were three cement plants in the immediate vicinity. There was no proof that this dust, if it was dust, had come from the Coplay plant or the other plants and, in fact, it might have come up from the quarry during the work of installation of the crusher.

placed his right foot on the spider, slipped and fell through the open space between the spider and the girder, falling a distance of approximately 35 feet into water located at the base of the crusher which was at the bottom of the pit or quarry. As a result of that fall, Hader sustained serious and disabling injuries.

Hader instituted a trespass action against Coplay and Kennedy in the Court of Common Pleas of Lehigh County. Hader *alleged* the following negligence on the part of Coplay and Kennedy: (a) a failure to place planks over the open spaces between the girders and top of the spider; (b) the duties of his employment, as imposed upon him by Coplay and Kennedy, compelled him, encumbered with a large and heavy bolt, to step over a very wide open space between the girder and the spider; (c) a failure to keep the surface of the top of the spider and the girders free of slippery substances and a failure to remove such slippery substances, the slipperiness not being discernible to the naked eye; (d) a failure to furnish him with a safe place in which to work; (e) a failure to supply scaffolds, toe-boards and planks of the kind and nature required by statute, by the rules and regulation of the Department of Labor and Industry of the Commonwealth and by the provisions of the Union contracts. Coplay and Kennedy joined Keifriter as an additional defendant in the action.

The matter came on for trial before the Honorable H. V. SCHEIRER and a jury. After a three day trial and at the conclusion of Hader's case, all three defendants moved for a compulsory nonsuit which was granted. A motion to remove this compulsory nonsuit having been denied, judgment of compulsory nonsuit was entered by the court against Hader and in favor of all three defendants. From that judgment Hader appeals.

In passing upon the propriety of this entry of a judgment of compulsory nonsuit certain principles

must guide us: (1) a nonsuit should be entered only in a clear case: *DiGiannantonio v. Pittsburgh Rwys. Co.*, 402 Pa. 27, 29, 166 A. 2d 28; *Haddon v. Lotito*, 399 Pa. 521, 161 A. 2d 160; *Dunmore v. McMillan*, 396 Pa. 472, 152 A. 708; (2) on appeal from a refusal to take off a compulsory nonsuit, the plaintiff must be given the benefit of all favorable testimony and every reasonable inference of fact arising therefrom and all conflicts therein must be resolved in favor of the plaintiff: *Idlette v. Tracey*, 407 Pa. 278, 281, 180 A. 2d 37; *Davies v. McDowell National Bank*, 407 Pa. 209, 211, 180 A. 2d 21; *Smith v. Pittsburgh Rwys. Co.*, 405 Pa. 340, 342, 175 A. 2d 844; *Donaldson v. Maffucci*, 397 Pa. 548, 156 A. 2d 835.

The court below entered the compulsory nonsuit and later refused to remove such nonsuit principally on two grounds, i.e., that Hader had voluntarily assumed the risk or danger and that he was guilty of contributory negligence as a matter of law. The court did state, however, that: "[h]ad [Hader's] conduct not been a factor in causation from act to injury, we would have had greater concern with the relationship between the defendants and their respective duties."

Upon appellate review we are not bound by the reason or reasons advanced by the court below in support of a judgment or order for it is the judgment or order itself which is the subject of review. In *Thomas v. Mann*, 4 Casey (Pa.) 520, 522, Mr. Justice (later Chief Justice) WOODWARD said: "The only error upon the record is a wrong reason for a right judgment; but, as we review not reasons but judgments, we find nothing here to correct." The true rule on appellate review is that stated in *Sherwood v. Elgart*, 383 Pa. 110, 115, 117 A. 2d 899: "The rule here applicable is that a correct decision will be sustained if it can be sustained for any reason whatsoever; in other words we will not reverse in such a case even though the

reason given by the Court below to sustain its decision was erroneous. [citing cases]." See also: *Kopka v. Bell Telephone Co.,* 371 Pa. 444, 449, 91 A. 2d 232; *Mitchell v. Marinelli,* 356 Pa. 517, 521, 52 A. 2d 203; *Rissmiller v. E. Lutheran Congregation,* 268 Pa. 41, 45, 110 A. 740; *Brew v. Hastings,* 206 Pa. 155, 161, 55 A. 922; *Youngwood Building and Loan Association v. Henry,* 137 Pa. Superior Ct. 124, 127, 128, 8 A. 2d 427.

In the case at bar, we do not, nor need we, pass upon the validity of the principal reasons given by the court below for the entry of this judgment of compulsory nonsuit, i.e., voluntary assumption of risk and contributory negligence, because the entry of this judgment was eminently proper upon the ground that this record discloses no evidence whatsoever of negligent conduct upon the part of Kennedy and Coplay and Hader has no remedy against Keifriter save under the provisions of the Workmen's Compensation Act.

At the outset we must inquire into the relationship between Coplay and Kennedy and Coplay and Keifriter insofar as the liability of each or all to Hader is concerned.

The terms of the written contract between Coplay and Kennedy spelled out their mutual obligations; Kennedy was required simply and solely to *manufacture,* according to specifications, and to *deliver* to Coplay the stone crusher and the *installation* of the stone crusher was not an obligation of Kennedy. This contract did provide that Coplay, in its judgment, could avail itself of the services of Kennedy's "engineers, millwrights or mechanics . . . for the purpose of superintending the erection or operation of the machinery" covered by the contract upon the payment to such engineer, millwright or mechanic of a specified daily rate for the services plus expenses by Coplay; in the event any such Kennedy employee should be so hired the contract recited that such employee should be con-

sidered Coplay's employee for whose acts Kennedy would assume no liability or responsibility and for whom Coplay would assume liability and responsibility.

Under this latter clause of the contract—although lacking direct proof, the only reasonable inference arising from the factual circumstances supports such theory—the services of one Edward Warfield, a field supervisor for Kennedy, were availed of by Coplay. The common sense of this arrangement is apparent. Coplay, a cement manufacturer lacking knowledge in its organization of the *manner of installation* of a stone crusher, availed itself of the services of one who was familiar with the manner in which a stone crusher should be installed so that Coplay might be assured that Keifriter—with whom Coplay had contracted to install the crusher—was installing the crusher in accordance with the plans and specifications and in a proper and workmanlike manner.[3]   In effect, Coplay had "borrowed" Warfield from Kennedy and Warfield became the employee of Coplay, not Kennedy, an employee paid by and under the control of Coplay.

A provision of the Coplay-Kennedy contract which looms large in Hader's argument provides that "[t]itle and right of possession to the" crusher remained in Kennedy until Coplay had fully paid for the crusher. From this provision it is argued that on the date of accident ownership of the crusher was in Kennedy and not Coplay and from such ownership arose responsibility, at least in part, for this accident.   Such argument lacks merit under the factual situation presented.   The retention of ownership and right of possession was simply a security arrangement between

---

[3] Jackson, a fellow-employee of Hader and business agent for the local union, termed Warfield, from his observation, a "technical adviser" on the job.

Coplay and Kennedy[4] because the actual *possession* and the *control* of the crusher as between Coplay and Kennedy was in the former. The right to repossess in Kennedy for non-payment for the manufacture and delivery of the crusher would not fasten liability for this accident upon Kennedy.

At the time of this accident Kennedy had completed all its obligations under the contract with Coplay, i.e., it had manufactured and delivered the crusher. Hader has neither alleged nor proved that the accident which befell Hader arose from or was caused by any defect in the manufactured crusher. The basis upon which Hader claims negligence is that he was not provided with a safe place to work, i.e., the failure to place planks over the open spaces between the girders and the spider and keep the tops of the girders and the spider free from slippery substances. It is obvious that with such acts or omissions to act Kennedy had naught to do. The line of cases represented by *Bisson v. J. B. Kelly, Inc.*, 314 Pa. 99, 170 A. 139 are patently inapposite because the work which Kennedy performed, neither allegedly nor probatively, created no hazard for Hader nor did it breach any duty owed to Hader, whether such duty be imposed by law or by contract.

The presence on the job site of Warfield did not render Kennedy liable. Even if Warfield in some manner controlled the installation of this crusher—which, as demonstrated, infra, was not the fact—it is clear upon this record that Warfield was acting on the job as an employee of Coplay, not Kennedy, and was acting for Coplay's, not Kennedy's, purposes.

---

[4] There is nothing of record to show that on the date of accident Coplay had not paid Kennedy in full; even if Coplay had not so paid, the fact is irrelevant so far as liability herein is concerned.

Viewing the evidence in the light most favorable to Hader, there is not a scintilla of evidence of any negligent conduct on the part of Kennedy which in anywise contributed to the happening of this accident and on that ground Kennedy was entitled to a compulsory nonsuit against Hader.

As to Coplay, we start out with the undisputed fact that it owned and possessed the premises where this accident occurred and that the crusher was manufactured for and delivered to it on the premises. The accident which occurred arose from the manner of installation of the crusher and, allegedly at least, from the failure of some person or persons to take the necessary precautions to provide a safe place to work for those who were engaged in installing the crusher.

Coplay had entered into a contract with Keifriter under the terms of which, on a cost plus basis,[5] the latter was to supply the men, material and equipment to *install* the crusher and to *erect* the structure to house the crusher. However, the electrical work was to be done by an electric contractor, not Keifriter, the steel was to be fabricated by Bethlehem Steel Company and

---

[5] In *Brooks v. Buckley & Banks*, 291 Pa. 1, 139 A. 379, this Court said (p. 9): "There is known to the contracting world, a great body of agreements called 'cost-plus' or 'time and equipment', or 'time and material' contracts; therein labor, labor and equipent, or labor, equipment and material is contracted for by the owner for certain work. . . . Many corporations and individuals are constantly required to make such contracts. It is because the character of the work to be undertaken is not subject to a contract on a unit basis on any fair terms." Further, (p. 11), it was said: "In all contracts or engagements to furnish men, material and labor on 'time and material' or 'cost-plus' basis, the owner with whom the contract is made is not within the Compensation Act, an employer or contractor to the employees engaged, though he does exercise control and direction over the work being done. Nor in such cases is the servant loaned to the owners." See also: *McFadden v. Pennzoil Co.*, 336 Pa. 301, 304, 9 A. 2d 412.

installed and erected by Keifriter and the cement was to be furnished, obviously, by Coplay. The objective of the Coplay-Keifriter contract was the installation of the crusher and the erection of the housing structure in accordance with certain plans and specifications. Under this contract Keifriter became responsible for the "end result", was not subject to control by Coplay in the manner of doing the work and was clearly an independent contractor. In *Stepp v. Renn,* 184 Pa. Superior Ct. 634, 637, 135 A. 2d 794, the Court said: "The courts have not formulated a hard and fast definition for the determination of whether any given relationship is one of independent contractor or that of employer-employee. They have, however, set forth indicia of such relationship to be used as guides in making such a determination, some of which are: Control of manner work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; skill required for performance; whether one is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether work is a part of regular business of the employer, and also the right of employer to terminate the employment at any time. [citing cases]." Applying these indicia to the instant factual situation it is clear beyond question that Keifriter was an independent contractor. See also: *Pennsylvania R.R. Co. v. Allegheny County,* 324 Pa. 216, 218, 188 A. 178; *Simonton v. Morton,* 275 Pa. 562, 119 A. 732.

Ordinarily one who engages an independent contractor is not responsible for the acts of such independent contractor or his employees. In *Fuller v. Palazzolo,* 329 Pa. 93, 105, 197 A. 225, this Court stated: "It is settled in Pennsylvania that a person is not liable for the acts of negligence of another, unless the relation of master and servant or principal and

agent exists between them and that when an injury is done by a person exercising an independent employment the party employing him is not responsible to the person injured."[6] The rationale of this rule is set forth in *Silveus v. Grossman,* 307 Pa. 272, 278, 161 A. 362: "The very phrase 'independent contractor' implies that the contractor is independent in the manner of doing the work contracted for. How can the other party control the contractor who is engaged to do the work and who presumably knows more about doing it than the man who by contract authorized him to do it? Responsibility goes with authority."

An owner of land who delivers temporary possession of a portion of the land to an independent contractor owes no duty to the employees of the independent contractor with respect to an obviously dangerous condition on that portion of the land in the possession of the contractor: *Grace v. Henry Disston & Sons, Inc.,* 369 Pa. 265, 85 A. 2d 118. See also: *Langdon v. Lawrence Park Realty Co.,* 254 Pa. 86, 98 A. 777; *Super v. West Penn Power Co.,* 392 Pa. 159, 140 A. 2d 20. An independent contractor is in possession of the necessary area occupied by the work contemplated under the contract and his responsibility replaces that of the owner who is, during the performance of the work by the contractor, out of possession and without control over the work or the premises: *Bitting v. Wolfe,* 368 Pa. 167, 82 A. 2d 21; *Engle v. Reider,* 366 Pa. 411, 77 A. 2d 621; *Patterson v. Palley Manufacturing Co.,* 360 Pa. 259, 61 A. 2d 861; *Valles v. Peoples-Pittsburgh Trust Co.,* 339 Pa. 33, 13 A. 2d 19; *Powell v. Ligon,* 334 Pa. 250, 5 A. 2d 373. *Cooper v. Heintz Manufacturing Co.,* 385 Pa. 296, 122 A. 2d 699, upon which

---

[6] Of course, if due care is not exercised in engaging the services of a competent, independent contractor then responsibility may be fastened on the one who engages the contractor. In the case at bar, such is neither alleged nor proved.

Hader relies, is clearly distinguishable from the case at bar for in *Heintz* liability was clearly predicated on the fact that Heintz retained control of the electricity which was the instrumentality which caused the accident.

Under the general rule, supra, Keifriter, as an independent contractor, was in possession of the crusher and the premises in which the crusher was situated and Coplay, during the time in which the work of installation was taking place, was out of possession and generally no liability could be fastened upon Coplay. Hader, however, contends that the general rule is inapplicable in the case at bar inasmuch as Coplay did retain control over the work of installation of the crusher. In support of its contention that Coplay retained control Hader relies on three lines of testimony: (a) that Henry Miller and D. J. Uhle, plant manager and vice-president, respectively, of Coplay, visited most frequently the job site; (b) that Warfield, loaned by Kennedy to Coplay, did instruct Hader and his fellow-employees in certain aspects of the installation of the crusher; (c) that *after* the accident Coplay laid planks across the open spaces twixt the concrete area and girders and the girders and the spider.[7]

In the first place, there was evidence that Miller and Uhle did visit the job site frequently to witness the progress of the work of installation of the crusher and the erection of the building but there is not a scintilla of evidence that either Miller or Uhle, or both of them, at any time gave, or attempted to give, any instructions as to the manner of installation of the crusher. Under

---

[7] In respect to this latter argument Hader relied on *Heintz*, supra. In *Heintz* after the accident it was *undisputed* that Heintz placed a guard at the transformer tower and this Court indicated that such evidence was properly admissible "not as indication of responsibility for the mishap", but to demonstrate Heintz's *control* over the instrumentality. (p. 304).

such circumstances their presence was completely innocuous. In *Murrin v. Rifugiato,* 373 Pa. 561, 565, 96 A. 2d 865, this Court said: "It is normal for an owner or an interested party to visit the scene of new construction to observe the progress of the work. Such inspections of finished work furnish no evidence of a right to control the workmen. . . ., inspection of the finished work shows only an interest in 'the result to be obtained' ".

In the second place, neither factually nor legally, did the presence of Warfield at the job site indicate that Coplay through Warfield exercised any control over the work of installation of the crusher. Hader testified that he received his orders from Sherman or Kraus, foreman and superintendent, respectively, for Keifriter, that Warfield was on the job to ascertain whether the crusher was being installed in accordance with specifications and, on three occasions, Warfield showed the men how to set the "wear plates", how to set a "precision pin" and how to see that the crusher fit and, in Hader's own words, "That was as far as it went." Jackson, a fellow-employee, testified that, since Warfield was a technical adviser, he went to him for advice when Sherman was not present but stated that he was working for Keifriter. Haydt, another fellow-employee, testified that Warfield never gave him orders, that he had asked Warfield for technical advice, that he received his orders from Keifriter's foreman and superintendent and that Warfield was on the job to see that the crusher was installed in accordance with the specifications. An examination of the record clearly reveals that Warfield was acting as a "watchdog" for Coplay to make sure that Keifriter installed the crusher and erected the housing in accordance with the plans and specifications. Such status in nowise conflicted with control of the work by Keifriter. *Allen v. Willard,* 57 Smith

(Pa.) 374; *Pennsylvania Railroad Company v. Allegheny County,* supra; *Townsend v. Pittsburgh,* 383 Pa. 453, 119 A. 2d 227 all illustrate the principle that one who employs an independent contractor may also employ a person to ascertain that the work of the independent contractor is being done according to plans and specifications and the employment of such person in no way indicates that the independent contractor is being subjected ᛣto control. Warfield's presence on the job site on behalf of Coplay and the functions which he performed in nowise demonstrated any control by Coplay of the manner of installation of the crusher.

*Duffy v. Peterson,* 386 Pa. 533, 126 A. 2d 413; *Spinozzi v. E. J. Lavino and Co.,* 243 F. 2d 80; and *Quinones v. Township of Upper Moreland,* 187 F. Supp. 260, are clearly distinguishable on their facts from the case at bar.

Lastly, the argument that, by furnishing and laying planks over the open spaces between the girders and spider after the accident, Coplay was shown to have exercised control is entirely without merit. The record is devoid of any evidence that the planks which were furnished belonged to Coplay or that Coplay laid any planks after the accident; in fact, the evidence is that the planks were delivered to the site of the crusher by a truck of Keifriter.

This record clearly reveals a complete absence of any evidence of negligent conduct on Coplay's part or any control or participation by Coplay in the work of installation of this crusher, hence there is a complete lack of legal responsibility on the part of Coplay for this accident.

Hader was an employee of Keifriter who was, in turn, an independent contractor. Hader was hired by and was subject to being fired by Keifriter. Keifriter alone paid Hader and deducted from his wages for

social security and taxes. Coplay had no right to hire or fire Hader and did not pay him or any of the other men working on the job. Hader was solely an employee of Keifriter and his sole and exclusive remedy for injuries sustained in this accident was against Keifriter under the Workmen's Compensation Act: Act of June 2, 1915, P.L. 736, as amended, 77 PS §1 et seq.

The amount of any recovery by Hader against Keifriter and the amount of any contribution to be paid to either or both Coplay or Kennedy, had either or both been found negligent, by Keifriter would have been limited by Keifriter's liability to Hader under the Compensation Act: *Maio, Exrx. v. Fahs,* 339 Pa. 180, 14 A. 2d 105; *Brown v. Dickey,* 397 Pa. 454, 155 A. 2d 836. We need not therefore inquire into the question whether Keifriter was negligent.

In view of the conclusion reached that neither Coplay nor Kennedy was negligent we need not consider whether Hader had either voluntarily assumed the risk or danger or was contributorily negligent as a matter of law.

Judgment of nonsuit affirmed.

Mr. Justice MUSMANNO dissents.