## Kalin v. Delaware Valley Telephone Company

*Waltjen, Kayton, Schneider & Davis,* for plaintiff.

*Walter W. O'Hara* and *Harold A. Thomson,* for defendant.

*Krawitz, Sigal & Ridley,* for additional defendant.

WILLIAMS, P. J., August 7, 1973.—This matter is before the court en banc on a motion to remove a compulsory nonsuit. At the conclusion of plaintiff's proof as to liability, the trial judge sustained motions for a compulsory nonsuit entered by counsel for both the original and additional defendants, on the ground that plaintiff had failed to establish negligence on the part of either defendant.

A nonsuit may only be entered in a clear case. Plaintiff must be given the benefit of all favorable testimony and every reasonable inference of fact arising therefrom and all conflicts therein must be resolved in his favor: Miller v. McMinn's Industries, Inc., 410 Pa. 234, 235 (1963).

Reviewing the record, we find that plaintiff on January 9, 1969, was employed as a service repairman by Smith Plumbing and Heating of Port Jervis, N.Y., and defendant, Delaware Valley Telephone Company, owns a building located on West Catherine Street, Milford, Pa. The building is constructed of concrete blocks, 20 feet in height, with a flat roof. The roof is about 45 feet in length and 31 feet in width. A furnace-air condition unit is constructed on the roof and is

located about 32 feet from the front and 5 feet from the rear of the building. A parapet extends around the entire roof. The parapet is not of uniform height and width. At the front of the building it is about 11 inches in width and 6 inches high. In the rear of the building it is about 7 inches in width and 2 inches high.

On January 9, 1969, the furnace failed to function and an employe of the Telephone Company telephoned Smith Plumbing and Heating, which had previously performed repair service for defendant, requesting it to repair the furnace. An employe, Harry Biccum, additional defendant, arrived to do the repair work at about 3 p.m. He was met by defendant's employe, Dominick Trotta, custodian of the building, who supplied a ladder and placed it at the front of the building, which provided access to the roof. About 5 p.m. Trotta ceased work for the day, after being advised by a superior whom he had telephoned. His departure left Biccum alone at the premises. Plaintiff, Orville Kalin, was called by his employer and instructed to assist Biccum in the repair of the furnace. There is nothing in the evidence which shows that any employe of defendant knew that Kalin was assigned to assist Biccum. Kalin arrived at about 5:15 p.m. and ascended to the roof via the ladder placed by Trotta. It was now dark. There were no artificial lighting facilities on the roof. A street light below the roof level, located near the right front corner of the building, reflected some light on the roof. Biccum had rigged a light device within the furnace which may have given some reflections over the roof itself. Kalin had a lantern type, six-volt flashlight.

After climbing the ladder, plaintiff crossed the roof to the furnace and began to inspect it. He was positioned on the right side of the furnace as it faced the front of the building. Biccum was working at the rear of the furnace. Kalin started to walk around Biccum,

who was in a crouched position. In doing so, his right foot stepped over the rear of the roof and he fell to the ground, suffering injuries for which he seeks compensation in this lawsuit. There is no evidence from which the jury could draw an inference that either the gravel on the roof or the parapet caused plaintiff to fall. He did not stumble or slip, nor did he testify that he had any contact with the parapet or was in any manner confused by the fact that it was not uniform in height and width. Plaintiff simply stepped over the edge of the roof. In respect to negligence on the part of defendant, the most the evidence shows is that there was but five feet of working space between the rear of the furnace and the edge of the roof.

The legal issues are:

a. What duty does the owner of a building owe the employe of an independent contractor, who is engaged in doing repair work on his building?

b. Was the alleged dangerous condition obvious?

c. What care must a workman employ to protect himself against injury?

## DUTY OF OWNER OF A BUILDING TO PROTECT EMPLOYE OF AN INDEPENDENT CONTRACTOR FROM INJURY.

Plaintiff argues that this issue is controlled by section 343 of Restatement 2d, Torts, which reads:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

"(b) should expect that they will not discover or

realize the danger, or will fail to protect themselves against it and

"(c) fails to exercise reasonable care to protect against the danger."

The duty owed by an owner of land to an employe of an independent contractor is defined in Hader v. Coplay Cement Mfg. Co., 410 Pa. 139, 151 (1963), in the following manner:

"An owner of land who delivers temporary possession of a portion of the land to an independent contractor owes no duty to the employes of the independent contractor with respect to an obviously dangerous condition on that portion of the land in the possession of the contractor: [Citations omitted.] An independent contractor is in possession of the necessary area occupied by the work contemplated under the contract and his responsibility replaces that of the owner who is, during the performance of the work by the contractor, out of possession and without control over the work or the premises:" [Citations omitted].

Hader is still the law. See Brletich v. United States Steel Corporation, 445 Pa. 525 (1971).

In Palenscar v. Michael J. Bobb, Inc., 439 Pa. 101, 105 (1970), the Supreme Court held:

" '[T]he law of Pennsylvania does not impose liability if it is reasonable for the possessor to believe that the dangerous condition would be obvious to and discovered by the invitee.' "

The issue is whether the asserted danger was an obvious one and such as would render it reasonable for defendant to believe would be discovered by plaintiff.

### WAS THE ALLEGED DANGEROUS CONDITION OBVIOUS?

The physical conditions of the roof were clearly discernible to anyone working on the roof. This is not the

situation where the roof was in poor physical repair or possessed some latent defect in construction known to defendant. The dangers complained of, the lack of uniformity in the height and width of the parapet, the gravel on the roof, the work space between the rear of the furnace and the edge of the roof, the condition of lighting on the roof, were readily discoverable by plaintiff. It is not unreasonable for an owner to believe that any one starting to work on a roof will acquaint himself with the dimensions of the work area in relation to the edge of the roof. Certainly, a workman on a roof, especially if it is dimly lit, is conscious of the danger that he might step over the edge of the roof, fall and be injured. Business invitees to a roof of a building are normally restricted to employes of the owner and employes of an independent contractor engaged in making repairs. This is not a situation that plaintiff was placed in a highly dangerous position due to the presence of an extremely dangerous instrumentality such as a high tension wire, under the control of defendant as was true in Mathis v. Lukens Steel Co., 415 Pa. 262 (1964), or Skoda v. W. Penn Power Co., 411 Pa. 323 (1963). Nor is this case factually similar to the circumstances present in Latch v. Reburn, 220 Pa. Superior Ct. 396 (1971), where plaintiff stepped in an unguarded pit in a garage. The pit was partially covered by an automobile and the exposed portion was darkened by the shadow of the automobile. In such cases, a nonsuit would be improper. In contrast, here the physical features of the building were obvious to anyone who happened to be on the roof. While the roof was at best dimly lighted, plaintiff had a lantern type flashlight. When he started to walk around his fellow employe, he had positioned it so as to shine on the rear of the furnace. Defendant had no knowledge that he was on the roof. The owner was charged with knowledge that Biccum was on the roof, but Biccum was not

injured. It is not unreasonable that the owner would believe that any workman on the roof would not walk on it in the night time without lighting his path with the flashlight available to him.

Under the circumstances presented by the evidence, defendant owed no duty to warn plaintiff of the obvious conditions on the roof.

## WHAT CARE MUST A WORKMAN EMPLOY TO PROTECT HIMSELF AGAINST INJURY?

It is argued that plaintiff had to concentrate his attention on his work and was thus prevented from guarding himself against stepping over the edge of the roof. The fact that plaintiff may have had his attention riveted on his work does not excuse him from using due care to protect himself from injury.

" 'What is required of a workman is that he exercise care for his safety according to the circumstances. He knows he is occupying a place of great danger and his care must be commensurate with that danger. He is equally cognizant of the fact that he must perform faithfully the services required of him. Both obligations are resting upon him and each must be met with due regard to the other' ": Mutter v. Slaymaker, 404 Pa. 369, 376 (1961), citing Van Zandt v. Phila. Baltimore & Washington R.R., 248 Pa. 276, 281. See also Gregorious v. Safeway Steel Scaffolds Company, 409 Pa. 578 (1963).

Skoda, supra, cited by plaintiff is not to the contrary (page 332). Since Skoda was a survival action, there was present a presumption that decedent used due care. Here, the ruling of the trial judge was not based on contributory negligence of plaintiff, but on his finding that defendant was not negligent.

The presence of defendant's custodian on the premises during a portion of the time Biccum was on

the roof did not alter the fact that Smith Plumbing and Heating was an independent contractor. The workmen were selected by Smith Plumbing and Heating. The custodian exercised no control over the workmen. See Brletich v. United States Steel Company, supra.

Neither is there any evidence that the work was of an emergency character and required the workmen to be on the roof at night. The evidence shows only that the custodian telephoned the contractor asking that the repairs be made. The fact that the work continued in the darkness was not proved to have occurred because of any request on the part of defendant.

All plaintiff's testimony shows is that an accident happened. The evidence is insufficient to establish negligence on the part of defendant.

## ORDER

And now, August 7, 1973, motion to remove compulsory nonsuit is denied.