## Tarantino v. P.H. Glatfelter Company

*Theodore Q. Thompson,* for plaintiffs.
*Peter J. Speaker,* for defendant.

CHRONISTER, *J.,* February 21, 1989—This matter is before the court on defendant's motion for summary judgment. Plaintiff Michael Tarantino was injured while working for his employer Combustion Engineering at defendant P.H. Glatfelter's premises on July 21, 1982. The complaint alleges that plaintiff's injuries were caused by Glatfelter's failure to take adequate safety precautions.

C.E. had contracted to rebuild a boiler unit for Glatfelter. Plaintiff was working in the bottom of the boiler unit where he and other C.E. employees were raising and lowering materials through a "lifting well." The lifting well consisted of rectangular openings in the upper floors created by removing sections of grates which ordinarily covered the openings. Materials could then be passed vertically from floor to floor through the openings using a "skip-bucket" on a hoist. Plaintiff's job at the time of the accident was to use a rope to guide the skip-bucket [a container used to carry debris from the upper floors] as it was being hoisted in the lifting well. The skip-bucket struck a section of grate as it passed through the opening of one of the upper floors, causing the grate to fall and crush plaintiff's leg.

Defendant Glatfelter has moved for summary judgment based on the premise that the work being done and the premises in question were controlled

by plaintiff's employer, Combustion Engineering, an independent contractor. In support of that, it recites the following facts. Stan Tomasevich, Combustion Engineering's construction manager on the project, testified that C.E. had supplied the equipment used by its employees in the debris-removal operation. He also testified that the relevant part of the premises had been turned over to C.E. for the performance of its work, that C.E. had sole control over the manner in which the work was done, that no one from Glatfelter ever controlled or directed C.E.'s operation at all; and that the decision to leave some of the grates in place was made by someone from C.E. John Scanlan, Combustion Engineering's general foreman, also testified that the relevant part of the premises had been turned over to C.E., that C.E. controlled the manner in which it performed the work, and that Glatfelter had no authority to give directions to C.E. personnel. John Carlisle, the C.E. employee working with plaintiff at the time of the accident, testified that no one from Glatfelter ever told the C.E. employees how to go about their work, and his opinion was that C.E. personnel would not have taken any instruction from Glatfelter if it had attempted to direct the manner of the work.

Defendant Glatfelter also recites these facts. This type of lifting operation is an ordinary procedure, typical of debris-removal jobs, not unique or different from any other similar project, and the risk of objects being dislodged and then falling is a normal risk. Lifting operations using a skip-bucket and a hoist are a normal and typical part of the job. Plaintiff had worked with the skip-buckets prior to the day of the accident; he knew there had been problems with the grating prior to his accident; and he had been told that the grates would move from their positions if struck. Plaintiff has admitted that

he was working on behalf of C.E. and at C.E.'s direction at the time of the accident; that C.E. supplied the equipment used by plaintiff at the time of his accident; and that C.E. was a competent and careful contractor at the time C.E. was hired by Glatfelter.

Defendant argues that summary judgment is appropriate because the accident occurred in the course of work being done by plaintiff's employer C.E. which was an independent contractor in full control of the premises and of the work being done on the premises. It says that ordinarily, one who engages an independent contractor is not liable for the acts of such independent contractor or his employees, citing *Hader v. Coplay Cement Manufacturing Co.*, 410 Pa. 139, 150, 189 A.2d 271, 277 (1963). Furthermore, it says, where, as here, an owner turns the premises over to an independent contractor for the performance of the work, the owner owes no relevant duty to the contractor's employees with respect to obvious or known dangers. *Id.* at 151, 189 A.2d at 277. Defendant's position is that it is free from liability because the owner of the property is under no duty to protect the employees of an independent contractor from risks arising from or intimately connected with defects or hazards which the independent contractor has undertaken to repair or which are created by the job contracted, citing *Celender v. Allegheny County Sanitation Authority*, 298 Pa. Super. 390, 394, 222 A.2d 461, 463 (1966).

Plaintiff counters that the facts are not as defendant portrays them. He says, in his brief, that the "skip-bucket" or hopper was the property of defendant; that two C.E. employees had complained to defendant's "safetyman" about conditions and problems that the gratings created; that defendant had a safetyman in the area while the work was being

performed; and that subsequent to the accident, the lighting was improved and the grates were secured. Unfortunately, these "facts" are not of record, plaintiff having failed to support them with any sworn testimony. Where a motion for summary judgment is supported by depositions and admissions of record, the opposing party cannot dispute the facts by merely relying on his pleadings or making bald, unsupported allegations in a brief. Pa.R.C.P. 1035(d).

Plaintiff also cited a number of authorities which are completely irrelevant to this case: *Lineaweaver v. Wanamaker,* 299 Pa. 45, 149 Atl. 84 (1930) (injured plaintiff was a customer); *Smith v. Hillside Coal & Iron Co.,* 186 Pa. 28, 40 Atl. 287 (1898) (injured plaintiff was an employee of defendant); *Pietruszka v. Bethlehem Mines Corp.,* 156 F.Supp. 523 (1957) (gratuitous licensee injured); *Arzt v. Lit,* 198 Pa. 519, 48 Atl. 297 (1901) (11-year-old boy gave defendant "permission" to run an elevator); *Orr v. Burns Detective Agency,* 337 Pa. 587, 12 A.2d 25 (1940) (master held responsible for injury inflicted by his servant upon a third person); *Toole v. United States,* 588 F.2d 403 (3d Cir. 1978) (manufacture of anti-tank explosives held to be extraordinarily dangerous activity); *Greenbaum v. United States,* 366 F. Supp. 26 (D.C. Pa. 1973) (business invitee on leased premises); and *Glass v. Freeman,* 430 Pa. 21, 240 A.2d 825 (1968) (land owner had duty to supervise seven-year-old).

Plaintiff's argument is somewhat difficult to follow, but we think it centers on the "special danger" or "peculiar risk" exemption to the general nonliability rule announced by *Hader v. Coplay, supra.* Defendant in its reply brief urges us not to consider this argument for two reasons—first, that plaintiff's brief was not timely filed; and second, that the "peculiar risk" exception was not pleaded. Defen-

dant's points are well taken. However, we prefer to address the argument on the merits rather than dismiss it on a technicality.

Plaintiff says that defendant's negligence consisted of failing to provide proper lighting in the work area, failing to exercise adequate safety controls in the area, failing to remove all of the floor gratings, and failing to secure the grates to the floor. He argues that the unsecured and/or unguarded grates and the inadequate lighting created a safety hazard unknown to those not normally frequenting the premises, that defendant had a duty to warn of these conditions, and that it should be liable under the "peculiar risk" doctrine.

Pennsylvania has specifically adopted the "special danger" or "peculiar risk" exception in sections 416 and 427 of the Restatement (Second) of Torts. *Philadelphia Electric Co. v. James Julian Inc.*, 425 Pa. 217, 228 A.2d 669 (1967). Those sections state:

"§416. Work Dangerous in Absence of Special Precautions—

"One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

"§427. Negligence as to Danger Inherent in the Work—

"One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when

making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger."

In *Ortiz v. Ra-El Development Corp.*, 365 Pa. Super. 48, 528 A.2d 1355 (1987), alloc. denied, 536 A.2d 1332, the Superior Court defined "special danger" or "peculiar risk":

"(1) the risk is forseeable to the employer of the independent contractor at the time the contract is executed, i.e., a reasonable person, in the position of the employer, would foresee the risk and recognize the need to take special measures; and

"(2) the risk is different from the usual and ordinary risk associated with the general type of work done, i.e., the specific project or task chosen by the employer involves circumstances that are substantially out-of-the-ordinary." *Id.* at 53, 528 A.2d at 1358.

The second prong of the test, the *Ortiz* court said, involves a two-step analysis. First, a court must examine the risk that would be posed by the general type of work to be performed under typical circumstances. In our case, the general type of work to be performed is raising and lowering materials in a boiler unit. We conclude that this is not especially dangerous. The court must next determine whether the circumstances under which the general work is done, i.e., the specific project or task, introduces a different kind or level of risk. In our case, we must ask whether the specific task of raising and lowering a skip-bucket in a lifting well through removed sections of grating introduced a different kind or level of risk. Based on the record before us, we conclude that it did not. The depositions of various employees make it clear that this type of lifting operation is typical of debris-removal jobs and that using a skip-bucket and

a hoist was a normal part of the job. Plaintiff also testified that most places he had worked before had used something similar to the grates.

The distinction between ordinary risk and peculiar risk is a mixed question of law and fact, and may, in clear cases, be made by the trial judge as a matter of law. *McDonough v. U.S. Steel Corporation,* 228 Pa. Super. 268, 324 A.2d 542 (1974). All construction work involves a risk of some harm; only where the work is done under unusually dangerous circumstances does it involve a "special danger" or "peculiar risk." *Ortiz, supra.* See *McDonough, supra,* (peculiar risk found when earth-moving machine had to be used on the edge of a pile of ore at night); *Colloi v. Philadelphia Electric Co.,* 332 Pa. Super. 284, 481 A.2d 616 (1984), (jury question whether peculiar risk presented by excavation of electric company's water pipe near a 13,000 volt line).

Defendant has cited to us *Sweger v. Alexander Properties Inc.,* 109 Dauphin Rep. 46 (1988) where an employee of an independent contractor was injured while working on a construction project when he broke through a plank of scaffolding near the roof level and fell eight floors down an elevator shaft. In granting summary judgment for the owner, the *Sweger* court said.

"The risk of falling down an elevator shaft was a danger just as obvious to plaintiff as it was to the [owners]. This danger was created by the work itself and was normally encountered in work of this type." *Id.* at 50.

Similarly in our case we should conclude that the risk of dislodging loose grating and being struck by it was an ordinary risk; summary judgment is therefore granted to defendant.

## ORDER

And now, February 21, 1989, defendant's motion for summary judgment is granted.