Eagle Truck Services LLP v. Wojdalski

C.P. of Philadelphia County, February Term, 2010 No. 00546

*William J. Fox*, for plaintiff.
*Francis X. Clark*, for defendant Wojdalski.
*Timothy C. Connor*, for defendant Robb H., Inc.

MASSIAH-JACKSON, *J.*, December 19, 2013—On the morning of November 2, 2008, a multi-alarm fire broke out at a two-story garage/warehouse at an industrial park in Northeast Philadelphia. The fire started on the roof of Building 7, then extended and spread to an adjacent garage/warehouse at Building 17. Both buildings and all contents were destroyed.

The eight acre industrial park owned by Robb H., Inc. contains twelve commercial buildings and offices. The tenants of Building 7 and Building 17 initiated this civil litigation to recover damages for their property losses.

On October 31, 2013, this court presided over the non-jury trial in the above captioned matter. All counsel were well prepared, provided research materials to the court, and were strong advocates for their clients. Memoranda of Law were filed on October 30, 2013 and supplemental memoranda of law were filed on November 15, 2013. In accordance with rule 1038 of the Pennsylvania Rules of Civil Procedure, this court submits Findings of Fact and Conclusions of Law in support of the orders of judgment

in favor of all plaintiffs.

## I. FACTUAL BACKGROUND

1. Defendant Robb H., Inc. ("Robb H.") owned 2900 East Orthodox Street, Philadelphia, Pennsylvania. Defendant William Hawthorne was the President of Robb H. from 1999 through 2008. This property housed multiple commercial buildings including Building 7 and Building 17. October 31, 2013, N.T. 20-21, 166-167.

2. Robb H. is a family owned commercial real estate company. October 31, 2013, N.T. 23, 25-27, 30, 164-165.

3. On July 11, 2007, Robb H. and Hart Trucking Repair and Hakan Rodop, trading as Rodop Trucking, Inc., (collectively "Rodop Trucking") entered into a commercial lease agreement for "Building #17 and Parking Area along South Property Line as Delineated at our meeting at the Site on July 10, 2007." Rodop Trucking used the premises for contractor's truck repair, storage and office space. Lease — Robb H. and Hart Trucking/Rodop Trucking.

4. On January 2, 2008, Robb H. and Eagle Truck Services, LLC, Aida Rosales, and Filiberto Calzadilla (collectively "Eagle Truck") entered into a commercial lease agreement for "Building #7 and the area immediately to the rear of said Building #7." Eagle Truck used the premises for an auto mechanic's shop. Lease — Robb H. and Eagle Truck.

5. Clause 3 of both leases state that the plaintiffs (Lessees) were responsible to maintain the leased property with the express exception of the roof, exterior walls, and foundation, which were to be maintained by Robb H. "Lessee shall be responsible for all repairs required,

except the roof, exterior walls, and structural foundations, which shall be maintained by Lessor."

6. Each lease contains the following identical clause 11:

11. Indemnification of Lessor. To the extent of the law, Lessor shall not be liable for any damage or injury to Lessee, or any other person, or to any property, occurring on the demised premises or any part thereof. Lessee agrees to indemnify and hold Lessor harmless from any claims for damages, which arise in connection with any such occurrence. Said indemnification shall include indemnity from any costs or fee, which Lessor may incur in defending said claim.

7. Clause 14 of both leases relates to the destruction of the premises. Clause 14 states, "[i]n the event that the building in which the demised premises may be situated is destroyed to the extent not less than one-third of the replacement costs thereof, Lessor may elect to terminate this lease whether the demised premises be injured or not." The lease continues, "total destruction of the building in which the premises may be situated shall terminate this lease." Lease — Both.

8. Clause 12 of the lease between Eagle Truck and Robb H. provides, "[l]essee, at his expense shall maintain plate glass and public liability insurance including bodily injury and property damage insuring Lessee and Lessor..." Lease — Eagle Truck.

9. Clause 12 of the lease between Rodop Trucking and Robb H. provides, "[l]essee, at his expense, shall maintain public liability insurance including both bodily injury and

property damage insuring Lessee and Lessor..." Lease — Robb H. and Hart Trucking/Rodop Trucking.

10. In October, 2008, Mr. Filberto Calzadillo contacted Mr. Hawthorne to inform him that the roof of Building 7 was leaking. October 31, 2013, N.T. 116.

11. Defendant-Hawthorne received bids from Valentino & Son and Pawel Wojdalski to install a flat rubber roof on Building 7. Mr. Hawthorne awarded Mr. Wojdalski the work because his bid was cheaper. October 31, 2013, N.T. 177.

12. The roofing contract identified "Bill Hawthorne" as the purchaser of services.

13. William Hawthorne located Mr. Wojdalski from a website of contractor listings and reviews. Mr. Wojdalski was listed as a four out of five star contractor on the website. Mr. Hawthorne did not read any of the reviews. October 31, 2013, N.T. 24, 172; Hawthorne, January 10, 2013, N.T. 23.

14. Mr. Hawthorne testified that Mr. Wojdalski provided a certificate of insurance for general contracting work with no exclusions for roofing and also a brochure. October 31, 2013, N.T. 34-35, 173.

15. Mr. Hawthorne retained Mr. Wojdalski to perform two small roof patching jobs in late 2007 and April 2008. Mr. Hawthorne "didn't see any need to" ask Mr. Wojdalski about his roofing experience prior to hiring Mr. Wojdalski for the roof patching projects. Hawthorne, January 10, 2013, N.T. 33-34, But see, Wojdalski, September 27, 2010, N.T. 129-130.

16. Mr. Hawthorne testified that he did not inspect Mr. Wojdalski's work on the patching jobs. He was satisfied with Mr. Wojdalski's patch work because the roof stopped leaking. Hawthorne, January 10, 2013, N.T. 37, 40.

17. After Mr. Calzadillo's call, Mr. Hawthorne entered into a contract with Mr. Wojdalski for flat rubber roof installation on Building 7 in October, 2008. Defendant-Wojdalski began work on Building 7 on or about October 31, 2008 and continued rubber roof installation on November 1, 2008. October 31, 2013, N.T. 26-27, 180.

18. This contract encompassed putting a new roof on 8100 square feet of the entire Building 7. Mr. Hawthorne never inspected Mr. Wojdalski's work on the roof of Building 7. October 31, 2013, N.T. 181-183.

19. Mr. Wojdalski explained in his deposition that this type of rubber roofing installation required the use of propane roofing torches attached by hose to propane tanks. The defendant would roll out rubber roof material and heat it by torch to connect the edges. The installation of a rubber roof requires the use of fire extinguishers or buckets filled with water in the event of a fire. Wojdalski, September 27, 2010, N.T. 74-75, 108-111, 158-159.

20. Mr. Wojdalski was not certified as a roofer and did not attend any trade classes to learn how to install a torch roof. All of his experience came from on-the-job training. During his on-the-job training, Mr. Wojdalski was managed by a supervisor and was never the lead on any of the roofing projects. Mr. Wojdalski stated that he handled hot roof installation under the direction of a supervisor "around five" times prior to performing any roofing work for Mr. Hawthorne and Robb H. Wojdalski, September 27,

2010, N.T. 58-59, 115-116.

21. Mr. Wojdalski testified that his former supervisor taught him to stay on the roof for one hour after a rubber torch roof installation to be sure everything was "safe". The defendant could not explain what types of hazards this precaution was intended to prevent. Remaining on the roof for an hour was part of procedure and workers would clean up during this time. They would "check everything", however, the defendant could not elaborate on the procedure or how the workers "checked" to determine the roof was safe. Wojdalski, September 27, 2010, N.T. 103-105.

22. Mr. Wojdalski knew not to leave gas tanks on the roof, however, on the evening of November 1, 2008, Mr. Wojdalski left the torches and gas tanks on the roof of Building 7. Mr. Wojdalski testified that he left the gas tanks on the roof because he believed that the tanks were empty. Wojdalski, September 27, 2010, N.T. 105-106, 178-181.

23. In the early morning hours of November 2, 2008, a fire started on the roof of Building 7. Images of the open flames and explosion were captured at about 2:30 a.m. on Robb H.'s surveillance cameras. October 31, 2013. N.T. 29, 99.

24. The fire spread from Building 7 to Building 17. October 31, 2013, N.T. 97; Fire Marshall Report PR-9.

25. The fire took approximately six hours to extinguish. The Philadelphia Fire Department's Fire Marshall's formal report noted the cause of the fire as an "Open Flame (Roofer's Torch)." Fire Marshall Report PR-9.

26. Building 7 was destroyed in the fire as was Eagle

Truck's repair shop including equipment, machinery, tools, and tractor trailers. Eagle Truck claims damages amounting to $115,520.00. October 31, 2013, N.T. 102-112, 117-135.

27. Building 17 was destroyed in the fire as was Rodop Trucking's property including tires, equipment, and tools. Rodop Trucking claims damages amounting to $86,005.00. October 31, 2013, N.T. 44-46, 51-60.

## II. LEGAL DISCUSSION

A. The Exculpatory Clause Does Not Relieve Robb H. or William Hawthorne from Liability.

Under Pennsylvania law, an exculpatory clause is valid if the clause satisfies three conditions. *Topp Copy Products Inc. v. Singletary*, 626 A.2d 98, 99 (Pa. 1993). The clause must not "contravene" public policy, the contract must be between persons and relate to their private affairs, and, the contract must not be a contract of adhesion. In *Dilks v. Flohr Chevrolet*, 192 A.2d 682 (Pa. 1963), the Supreme Court noted that even if an exculpatory clause of a contract is valid it will be unenforceable unless the language of the parties is clear that a person is being relieved of liability for his own acts of negligence. *See, Dilks, supra,* 192 A.2d at 687, quoting numerous cases.

The lease agreements here appear to satisfy the three conditions: the contracts are not contracts of adhesion, the contracts define private relationships and the use of the premises between Eagle Truck, Rodop Trucking and defendant-Robb H., and, the release does not contravene public policy. Our appellate courts have also held, however, that even if an exculpatory clause is determined to be valid,

it will still be unenforceable unless the clause satisfies a four prong standard. Any instrument which diminishes the legal rights of another must spell out the intentions with great particularity. The *Topp Copy* court, *supra*, identified the four prongs at 626 A.2d 99: 1) the contract language must be construed strictly, since exculpatory language is not favored by the law; 2) the contract must state the intention of the parties with the greatest particularity, beyond doubt by express stipulation, and no inference from words of general import can establish the intent of the parties; 3) the language of the contract must be construed, in cases of ambiguity, against the party seeking immunity from liability; and 4) the burden of establishing the immunity is upon the party invoking protection under the clause.

Clause 3 states in pertinent part:

"Lessee shall be responsible for all repairs required, except the roof, exterior walls, and structural foundations, which shall be maintained by Lessor."

Clause 11 states in pertinent part:

"To the extent of the law, Lessor shall not be liable for any damage or injury to Lessee, or any other person, or to any property, occurring on the demised premises or any part thereof."

Clause 14 states in pertinent part:

"In the event that the building in which the demised premises may be situated is destroyed to an extent of not less than one-third of the replacement costs thereof, Lessor may elect to terminate this lease whether the demised premises be injured or not. A total destruction

of the building in which the premises may be situated shall terminate this lease."

This court concludes that the ambiguity in the lease agreement relating to the scope of the term "demised premises" must be construed against defendant-Robb H. While the leased properties are identified as Building 7 and Building 17, it is unclear within the language of the lease whether the term "demised premises" was intended to include the exterior parts of the building. No clause in either lease gives the tenant any responsibility or control over the exterior walls, foundation, or roof, but rather expressly reserves responsibility for the roof and the exterior on Robb H. The exculpatory portion of Clause 11 limits the liability of Robb H. for any negligence "occurring on the demised premises or any part thereof." Although the lease expressly states that the parties intended to relieve Robb H. from liability for the "demised premises," it is unclear whether or not the intention of the parties was to limit Robb H.'s liability for negligence of maintenance operations occurring on the roof.

This court concludes that although this defendant has invoked protection from Clause 11, Robb H. is unable to meet its burden to establish immunity. Robb H. is not immune from liability for negligent acts occurring on or in relation to maintenance of the roof. At best, the lease agreements do not articulate the intention of the parties. It appears that the lease agreements provide for full liability and responsibility for all such negligent acts on defendant-lessor-Robb H. where, as here, the roof of the building remains in control of the landlord.

B. Robb H. and William Hawthorne Negligently Failed

to Hire a Competent and Careful Contractor

Restatement (Second) of Tort, section 411 provides:

"§411 Negligence in Selection of Contractor

An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor

(a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or

(b) to perform any duty which the employer owes to third persons".

Section 411 imposes liability on a property owner for the negligent hiring of a contractor

when third persons are harmed as a result of such negligence.

In *Mentzer v. Ognibene*, 597 A.2d 604 (Pa. Superior Ct. 1991), the Superior Court noted the general principles and policy of Pennsylvania law which insulate a property owner from liability for the negligence of its independent contractor. The appellate court quoted *Marshall v. SEPTA*, 587 F. Supp. 258, 261-62 (E.D. Pa. 1984):

"As a general rule, the employer of an independent contractor is not liable for physical harm caused another by an act or omission of the contractor or his servants. *Hader v. Coplay Cement Co.*, 410 Pa. 139, 189 A.2d 271 (1963); *Gonzalez v. U.S. Steel Corp.*, 248 Pa. Super. 95, 1007[sic], 374 A.2d 1334, 1340 (1977), *aff'd*, 484 Pa. 277, 398 A.2d 1378 (1979); *McDonough*

*v. U.S. Steel Corp.*, 228 Pa. Super. 268, 273-74, 324 A.2d 542, 545 (1974). *See* Restatement (Second) of Torts § 409. An independent contractor is in possession of the necessary area occupied by the work contemplated under the contract and his responsibility replaces that of the owner who is, during the performance of the work by the contractor, out of possession and without control over the work or the premises. *Hader v. Coplay Cement Co.*, 410 Pa. at 151, 189 A.2d at 277."

There are three narrow exceptions to this general rule. Our courts recognize that an owner, such as Robb H., is expected to entrust the responsibility for the work to a qualified contractor and may justifiably depend on the contractor's expertise. Exceptions to this general rule of non-liability exists in situations where the owner has retained control of the work designated to the contractor, or, the work creates a peculiar unreasonable risk of harm or special danger to others unless precautions are taken, or, the owner negligently selected a contractor. *Mentzer v. Ognibene, supra*, 597 A.2d at 610; *Wilk v. Haus*, 460 A.2d 288, 294 (Pa. Superior Ct. 1983).

In this case, there was no evidence presented that defendant-Hawthorne or Robb H. retained control of the timing, manner of work or other supervisory function. *See* Restatement (Second) of Torts, §414; *Beil v. Telesis Construction, Inc.*, 11 A.3d 456 (Pa. 2011). The plaintiffs vigorously argued throughout the litigation that the nature of the roofing working, the use of propane torches, and risk of fire is a special danger and/or peculiar risk. Although plaintiffs' arguments are compelling, this court is not willing to conclude as a matter of law that the risk of the destructive fire was contemplated by Mr. Hawthorne at

the time he entered into the contract with Mr. Wojdalski. Moreover, the negligent acts and omissions when the roofer performed his work was one of several causes of the destruction of the two buildings. *See,* Restatement (Second) of Torts, §§416 and 427; *Edwards v. Franklin & Marshall College,* 663 A.2d 187 (Pa. Superior Ct. 1995).

When defendant-Hawthorne failed to exercise reasonable care to employ a competent roofer to do the work which he knew required special skill and care in the use of torches, propane tanks and safety equipment, he is liable for his failure to maintain the premises for these plaintiff-lessees. When the owner/lessor Robb H. negligently selected an incompetent roofer to perform maintenance and repairs on the roof of the leased property, those actions fell within the exception to the general rule of non-liability of owners who entrust work to independent contractors. *See, Adler v. Sklaroff,* 36 A.2d 231 (Pa. Superior Ct. 1944).

Robb H. and William Hawthorne contend that there is no direct evidence of how the fire started, since no one was on the roof in the early morning hours of November 2, 2008. A trier of fact is free to consider direct and circumstantial evidence in reaching a verdict. In this case, Mr. Wojdalski testified at his deposition that when he left the work site at 6:30 p.m. on November 1st, there were three gas tanks, tools and torches which he left on the roof. N.T. 177-180. This defendant stated that he knew he should have removed the gas tanks, however, he thought they were empty. N.T. 105-106, 178-181. The video surveillance films clearly showed to Mr. Hawthorne and to others that the fire was blazing at 2:30 a.m. on November 2nd. There is sufficient circumstantial evidence to conclude that the

hot roofing material and rubber installation which were left unattended the prior evening smoldered and simmered and ignited the propane gas tanks and debris causing the explosion and open flames several hours later.

Comment a of the Restatement (Second) of Torts, §411, states:

> "*a. Meaning of 'competent and careful contractor.'* The words 'competent and careful contractor' denote a contractor who possesses the knowledge, skill, experience, and available equipment which a reasonable man would realize that a contractor must have in order to do the work which he is employed to do without creating unreasonable risk of injury to others, and who also possesses the personal characteristics which are equally necessary."

The record reveals that neither Pawel Wojdalski nor PW Custom Construction possessed the common sense, knowledge, skill, training or experience for a major roof installation of this magnitude which a reasonable owner/lessor should have realized that a contractor must have in order to do the work they were employed to do.

Defendant-Wojdalski was unable to explain why certain procedures were in place to ensure no fires and no hot spots and no smoldering of roof materials at the end of the work day. N.T. 103-105. He failed to appreciate the risks and danger associated with empty propane tanks.

Comment c of the Restatement (Second) of Torts, §411, states:

> "*c. Factors determining amount of care required.* The amount of care which should be exercised in selecting

an independent contractor is that which a reasonable man would exercise under the circumstances, and therefore varies as the circumstances vary.

Certain factors are important: (1) the danger to which others will be exposed if the contractor's work is not properly done; (2) the character of the work to be done — whether the work lies within the competence of the average man or is work which can be properly done only by persons possessing special skill and training; and (3) the existence of a relation between the parties which imposes upon the one a peculiar duty of protecting the other."

The record establishes that "Bill Hawthorne" and Robb H. executed a contract for installation of a rubber roof using propane roofing torches. This type of installation required readily accessible water source. It also required that the rubber cool down to be safe. It required a period of one to two hours for workers to "watch" the site and confirm that there was no fire hazard.

Clearly, one who hires a contractor who is expected to handle flammable materials is required to exercise greater care in the selection of the worker. The Restatement Comment c provides:

"...if the work is such as will be highly dangerous unless properly done and is of a sort which requires peculiar competence and skill for its successful accomplishment, one who employs a contractor to do such work may well be required to go to considerable pains to investigate the reputation of the contractor and, if the work is peculiarly dangerous unless carefully done, to go further and ascertain the contractor's actual

competence."

Defendant-Hawthorne testified at trial that he never checked Mr. Wojdalski's employment references. N.T. 24; that he knew roofing is a specialty trade, N.T. 25; and, Mr. Wojdalski had previously worked as a painter and done two small roof repair jobs, N.T. 22-23. Mr. Hawthorne had never inspected Mr. Wojdalski's prior roof repair work, and, he himself had no experience in hiring roofers or performing roof repairs, N.T. 26-27. Each time defendant-Wojdalski was selected by defendant-Hawthorne to do work was because he was the cheapest contractor. N.T. 39. Mr. Hawthorne testified that he conducted no investigations with respect to Mr. Wojdalski and his qualifications. N.T. 172-73. Mr. Hawthorne did not prepare the scope of work or select the roofing materials to supervise or provide any advice about the roofing work. N.T. 180-181. Even though this type of roof involved torches, Mr. Hawthorne was not aware of any special precautions taken by the roofer. N.T. 181.

The Restatement guidelines at Comment c also indicate that "the extent of the employer's knowledge and experience in the field of work to be done" should also be taken into account. Defendant-Hawthorne testified at trial that he knew nothing about the torch down process or hot groove application for 8100 square feet installation of the new roof. N.T. 181.

The plaintiffs-Eagle Truck and Rodop Trucking presented substantial evidence in support of their causes of action for negligence, negligent hiring, negligent supervision and respondeat superior. William Hawthorne executed the contract in his own name. Robb H. was the

owner and landlord of the buildings. Defendant-Hawthorne negligently selected the contractor and failed to select a competent contractor. These defendants negligently employed an incompetent and careless contractor.

## C. Damages

The testimony of Mr. Hakan Rodop was credible. The court has reviewed and relied on the photographs and other exhibits when considering the devastation and damages to plaintiffs' property. Judgment will be awarded in the amount of $115,520.00.

The testimony of Mr. Filiberto Calzadillo and his wife, Mrs. Aida Rosales was credible. The court has reviewed and relied on the photographs and other exhibits when considering the devastation and damages to plaintiffs' property. Judgment will be awarded in the amount of $86,005.00.

## III. CONCLUSION

This court concludes that the fire which occurred on November 2, 2008, was avoidable. It was the result of carelessness and negligence of Pawel Wojdalski and PW Custom Construction when those defendants installed a torch down rubber roof. The unskilled and untrained roofer improperly applied and/or used the roofing materials and the propane torch.

This court also concludes that William Hawthorne and Robb H., Inc. in complete disregard of the duty owed to the plaintiffs, failed to exercise reasonable care or investigation to employ a competent contractor. The type of work, known by those defendants to be specialty work and dangerous if not properly done, required William

Hawthorne and Robb H., Inc. to go further than look at a website and pick the cheapest contractor without any effort to ascertain the contractor's actual competence for this major project.

For all of the reasons set forth above in these Findings of Fact and Conclusions of Law, judgment will be entered in favor of all plaintiffs and against all defendants.

### ORDER

And now, this 19th day of December, 2013, for the reasons set forth in the Findings of Fact and Conclusions of Law filed this date, it is hereby ordered that Judgment is entered in favor of plaintiffs Eagle Truck Services, LLC, Filiberto Calzadillo, and Aida Rosales (husband and wife), in the amount of eighty-six thousand five dollars ($86,005.00) and against all defendants Pawel Wojdalski and Robb H., Inc.